## KINNEY vs. CROCKER, Receiver &c.

The courts of this state have jurisdiction of actions for injuries caused by the negligence of the defendant's servants employed by him in operating a railroad in the state, although he is in possession of the road as a receiver appointed by the United States court of this district, and leave to bring such actions has not been obtained from that court.

Whether a state court could properly take jurisdiction of an action to recover from

such receiver possession of the property which he held by order of the federal court, the plaintiff being a stranger to the equitable action in that court in which such order was made, it was not necessary in this case to decide.

The decisions of the supreme court of the United States in *Wiswall v. Sampson,* 14 How., 52, and *Freeman v. Howe,* 24 How., 450, criticised.

The injuries to the plaintiff having been caused by a collision with a train of cars on the defendant's road, at a crossing in the city of Milwaukee, *Held,* that the court did not err in instructing the jury that the defendant was bound, under the circumstances, to use the utmost care, and to employ all the usual and well known means for preventing collisions with persons crossing at that place; "that if the defendant rang the bell, that was one means; if a man on the rear of the car made motions with his hands, that was another; if then they found that there was another common and usual means, the use of which would have prevented the injury, and the defendant did not make use of it, he was liable."

These instructions could not fairly be interpreted to mean that if the defendant used the *most efficient* means of warning he would still be liable because he failed to use another means sometimes used in the absence of the one actually employed, though never in connection with it.

In such a case evidence of the nature and extent of the plaintiff's business, and the loss resulting to him from inability to attend to it by reason of the injury, may properly be admitted; and it is not error to instruct the jury that "if a man has an ordinary business yielding ordinary receipts, he will be entitled to recover the diminution of those receipts resulting from such injury."

APPEAL from the County Court of *Milwaukee* County.

The verdict and judgment in this case were for the plaintiff; and the defendant appealed. The grounds of the appeal are sufficiently stated in the opinion.

*Cary & Pratt,* for appellant:

1. The receiver is an officer of the court by which he was appointed, and his possession is the possession of the court; so that in fact this action is against that court. But no court allows itself to be brought into another court as a party, when it possesses full power and jurisdiction to do complete justice to all concerned. The former practice was for the court which had made the appointment to restrain parties from prosecuting its receiver. Under the Code, however, all equitable defenses are allowable, and there is no propriety in going to a court of equity to restrain the proceedings of a court of law. If judgment is rendered in this action it will be a personal judgment against the defendant, and he could not, as a matter of right,

insist that the amount thereof be allowed him in the settlement of his account as receiver; but if the suit had been brought by leave of the district court, or if the plaintiff had filed his petition for relief in that court, and to have the amount of his claim ascertained by a reference to a master or on an issue out of chancery, in either case the judgment would be ordered paid out of money in the receiver's hands. The comity due from one court to another should forbid the county court from taking jurisdiction under such circumstances. The action should have been dismissed in the court below, and for that reason should be reversed here. 2 Story's Eq. Jur., § § 833–891; *Parker v. Browning,* 8 Paige, 388; *Angel v. Smith,* 9 Ves., 335; *Chalie v. Pickering,* 1 Keen, 749; *In re Merritt,* 5 Paige, 131; *Bricknell v. Stamford,* 17 Eng. Ch., 369. 2. The court erred in its instructions as to the measure of damages. Sedgw. on Dam, 69 and 82. 3. The court erred in instructing the jury that the defendant was bound to use the utmost care to prevent injury to persons crossing the railroad track. The highest degree of care is required of a common carrier towards persons entrusted to his custody, but as to third persons only ordinary diligence is required. Redfield on Railways, 323–29; *Brand v. Schenectady & T. R. R. Co.,* 8 Barb., 368. 4. The court erred in charging that the defendant was bound to employ all the usual and well known means for preventing collisions with persons crossing, and that if there was any common and usual means of warning, the use of which would have prevented the injury, and the defendant did not use it, he was liable. Such a rule would stop the running of the road. It would be impossible for the same road to use, at the same time, all the means known to railroads for preventing collisions, and although all but one were used, the road would still be liable for the lack of that one, notwithstanding the means used would, under ordinary circumstances, be much more effectual to prevent injury than the one omitted.

*E. Mariner,* for respondent.

Kinney vs. Crocker, Receiver &c.

*By the Court*, PAINE, J.   This suit was brought to recover for injuries occasioned to the plaintiff by the alleged negligence of the agents and servants of the defendant, in running a train of cars across a street in the city of Milwaukee without proper warning.   The defendant was at the time in possession of and operating the railroad as receiver under the orders of the U. S. District Court.   The court below was asked to instruct the jury that unless they should find that the plaintiff had leave from the district court to bring this suit, he could not recover; which was refused, and an exception taken. The refusal was proper.   The authorities relied on by the appellant only show that a court of equity will, on a proper application, protect its own receiver where the possession which he holds under the authority of the court is sought to be disturbed, or where he is sued for any act done by the order or direction of the court.   In such cases it will sometimes punish as for a contempt, any attempt to disturb the possession of its officer; it will sometimes restrain suits at law, and draw to itself all disputed claims in respect to the subject matter; and sometimes it will allow the suits at law to proceed.   But in all these cases it is not a question of jurisdiction in the courts of law, but only a question whether equity will exercise its own acknowledged jurisdiction of restraining suits at law under some circumstances, and itself dispose of the matter involved. It follows that although a plaintiff in such a case, desiring to prosecute a legal claim for damages against a receiver, might, in order to relieve himself from the liability to have his proceedings arrested by an exercise of this equitable jurisdiction, very properly obtain leave to prosecute, yet his failure to do so is no bar to the jurisdiction of the court of law, and no defense to an otherwise legal action on the trial.   There can be no room to question this conclusion in all cases where there is no attempt to interfere with the actual possession of property which the receiver holds under the order of the court of chancery, but only an attempt to obtain a judgment at law on a claim

for damages. But the Court of Appeals of New York have asserted the same rule in the case of an ejectment brought under a claim of paramount title to land which had been conveyed in an equity suit to a receiver. And they expressly decline to follow the doctrine of the U. S. Supreme Court in *Wiswall v. Sampson*, 14 How., 52. See *Chautauque County Bank v. Risley*, 19 N. Y., 376.

The decision of the U. S. Supreme Court in the case referred to, is somewhat similar in principle to its recent decision in *Freeman v. Howe et al.*, 24 How., 450, where it was held that property could not be replevied from the marshal by process from a state court issued in favor of a stranger to the suit in which the marshal had seized it, but that the only remedy of such party was to file a bill in equity in the federal court, though both parties would have been citizens of the same state. It is true that in the opinion importance is given to the fact that there was a question between the state and federal courts. But although that fact might give additional force to an argument founded upon comity and expediency, yet I have never been able to see that it was material to a determination of the mere question of jurisdiction upon legal principles. And the conclusion of that court does not seem to be based upon any effect given to any provision of the constitution or laws of the United States, so that its decision would, according to the prevailing opinion, be binding upon the state courts, but seems to rest upon grounds of comity and expediency. Whether, if the state courts should entertain different views on that question, they would consider themselves absolutely bound by that decision, it is not now necessary to inquire. It is very evident that the Court of Appeals did not regard the decision in 14th Howard as binding upon them as a general rule of law; though whether they would have held the same if the receiver in that case had been appointed by a federal court, cannot be known.

The result of the case of *Freeman v. Howe* is to draw into

the federal court all litigation in respect to the title to property attached by the marshal, although between strangers to the attachment suit, and although involving the adjudication of mere legal claims between citizens of the same state, which the constitution designed to exclude from federal jurisdiction. The doctrine of the case of *Wiswall v. Sampson*, if applied as the counsel for the receiver claims it should be, would draw into those courts not only the adjudication of all actions respecting the title to property in the custody of a receiver, but all actions for the non-performance of contracts by him. The results of such a rule would be very extensive. The federal courts first held that they had no jurisdiction at all in cases against corporations, on the ground that they were not " citizens," within the language of the constitution. They afterwards changed that rule, and under the new doctrine the federal court takes jurisdiction of proceedings against railroad corporations in this state. It appoints receivers, who take possession of and operate the roads. While so operating them they make thousands, perhaps millions of legal contracts for the transportation of freight and passengers. They are liable to cause damage to individuals by the negligence of their employees in conducting the vast business which they transact. Yet, upon the doctrine contended for, all litigation upon these causes of action, although in many cases being only between citizens of this state, would be drawn into the federal court, and the state courts absolutely divested of jurisdiction, unless the federal court saw fit first to grant it. Such results of the ruling of the federal courts would certainly furnish a very striking illustration of the maxim, *boni judicis est ampliare jurisdictionem.* And it would be small respect to their example if the state courts should hasten to abdicate their jurisdiction over so great a class of legal actions, until it is established that they are bound to do so. Such a rule cannot be held to be established ; but the jurisdiction of the state court remains un-

impaired, subject to the power of courts of equity to restrain the parties from proceeding at law, upon proper grounds.

It is also claimed that the court erred in its instruction to the jury as to the degree of care required of those who were managing the train. The judge instructed them that "the defendant was bound, under the circumstances, to use the utmost care, and to employ all the usual and well known means for preventing collisions with and injuries to persons crossing at that place." The appellant claims that the defendant was not bound to use the utmost care, but only ordinary care; and that the degree of care required of the defendant was no greater than that required of the plaintiff. But this cannot be true. Certainly the degree of care required of those who undertake to manage anything so dangerous to others as a train of cars, must increase with the probability that without it an injury will happen. It is a proposition which, it would seem, should command universal assent, that those running a train of cars across the streets of a great city swarming with human beings, should use the utmost care to avoid injury, and that they should be held responsible for a higher degree of diligence than is required from those who are liable to be injured. Those in charge of the train, from their very occupation, have their attention constantly directed to its locality and to its liability to inflict damage. It is their especial business and duty to keep their attention fixed upon, and to so conduct it as to avoid that result. But while individuals are required to use what would be ordinary care and prudence under the circumstances, to avoid injury, it would be unnatural to expect, and unreasonable to hold that they should use such an extreme degree of vigilance as may fairly be required of all who undertake specially to manage a powerful force which may, if improperly managed, produce great damage and destruction. That those running cars through the streets of a city are held to the utmost care is expressly shown by the following cases:

*Kelsey v. Barney*, 2 Kern., 425 ; *Johnson v. Hudson River R. R. Co.*, 6 Duer., 641, affirmed by the Court of Appeals, 20 N. Y 75 ; *Fero v. R. R. Company*, 22 N. Y., 211.

But the appellant further objects to the proposition that the defendant was bound " to employ all the usual and well-known means for preventing collisions," &c.   He says that according to this if the defendant had used the most efficient means for giving warning, he would still have been liable if he omitted some other means less efficient, and one which, though sometimes employed, was never employed in connection with the one actually used.   But such an interpretation of the charge, even if it had been left in the general form before stated, would be altogether too critical.   In the case in the 6th Duer, the instruction was that " the defendants were bound to exercise the utmost care and diligence" and " to use all the means and measures of precaution that the highest prudence would suggest, and which it was in their power to employ."   And Judge DENIO, in delivering the opinion of the Court of Appeals, said that this rule did not " overstate the obligations" of the defendant.   The language there was more general than that used in this case ; for here the judge only required them to use all usual and well known means.   But in neither case could such general language be fairly interpreted to mean that if the defendant used the most efficient means of warning, it would still be liable because it failed to use another means sometimes used in the absence of the one really employed, though never in connection with it.

But to remove all chance for misunderstanding, the judge proceeded in this case to illustrate his meaning by applying his remarks to the evidence.   He told the jury that " if they found that the defendant rang the bell, that was one means ; that a man on the rear of the train made motions with his hands, that was another ; if then they found that there was another common and usual means, the use of which would have prevented the injury, and the defendant did not make use of such

means," he was liable. This language, which required the jury to find that the means omitted would, if used, have prevented the injury, necessarily involves the idea that the means omitted must have been more efficient tha n those employed. The judge proceeded still further to apply his remarks to the question of a flagman being kept at the crossing.* But that was only a still more specific statement of the proposition, and presents no new question. The clear meaning of the charge was, that if keeping a flagman at such a crossing was a common and usual means of warning, which, if used here, would have prevented the injury, and it was not used, the defendant would be liable, although some other usual means, less efficient, might have been used. In this there was no error.

On the trial, the plaintiff was allowed to give evidence of the character and extent of his business and of the effect of his inability to attend to it by reason of the injury. And the judge instructed the jury that if they found for the plaintiff " he would be entitled to recover, in addition to other damages sustained, for all damages to his legitimate business, but not for speculation that he might be engaged in ; but that if a man had an ordinary business, yielding ordinary receipts, he would be entitled to recover the diminution of those receipts resulting from his inability to attend to his business, occasioned by the injury." There was no exception to this part of the charge, though the question is presented by a previous exception to the admission of the evidence. But the admission of the evidence, and the instruction as to damages, were both proper. *Shepard v. Gas Company*, 15 Wis., 318.

The judgment is affirmed.

---

*The following is the language of that part of the charge here alluded to : "I think it appeared from the defendant's witness, that a man had been kept there to flag that crossing. Whether this is so or not, if you find that this is a common and usual means of warning, and that the use of it in this instance would have prevented the accident, and that the defendant did not use it, then I think he is liable in this action." Only the second sentence was excepted to.—REP.