St. Joseph & Denver City Railroad Co., *et al.*, v.
James Smith, *as Treasurer, &c.*

1. Receivers, Appointed by Federal Courts; *Actions Against; Jurisdiction of State Courts.* A county treasurer filed his petition in the district court against a railroad company, and the receiver of said company appointed by the circuit court of the United States to recover the taxes levied upon said company for the year 1874. The petition alleged the appointment of the receiver and his possession and control of the road. Without, so far as the record discloses, the issue or service of any process, the company and receiver filed a joint answer, in which they admit that a portion of the taxes are properly chargeable against the company, and consent that judgment may be rendered against them in the action for that amount, and also allege the appointment of the receiver by the United States circuit court, that he is not amenable to the process of the district court, and pray that as to him the suit may be dismissed. *Held,* That the district court had jurisdiction, and properly rendered judgment against the receiver.

2. ————— While it may be conceded that a court appointing a receiver may draw to itself all controversies to which the receiver is a party, or which affect the property under his control, yet it does so only by direct action upon parties by way of injunction, or proceedings as for contempt; and the appointment in no manner affects the ordinary jurisdiction of other tribunals.

3. ————— An allegation therefore, in an answer, that the defendant is a receiver duly appointed by another court, raises no question as to the jurisdiction of the court in which the answer is filed.

4. Assessing and Taxing Real Estate; *Powers of Board of Equalization.* Under the general tax law, the valuation of real estate is fixed in the first place by the assessor, and not by the owner, and may thereafter be changed by the board of equalization at a regular meeting of which legal and public notice is given; and by the law of 1874 the assessment and valuation of railroad property was to be the same as that of other property.

*Error from Marshall District Court.*

Action by the county treasurer, against the *Railroad Company,* and *William Bond* as receiver of said company, to recover certain unpaid taxes levied on certain real property belonging to said *Railroad Company* in Marshall county. The property is described in the petition as follows:

"In Guittard township, the road-bed, right-of-way, and railroad track of said company, situate in Guittard township, a strip of land extending on each side of said railroad track, and embracing the same together, with all the stations and improvements thereon, commencing at the point where said railroad track crosses the east boundary-line of said township in entering said township, and extending to the point where the track crosses the west boundary-line of said township in leaving the same."

Like property lying in the townships of Franklin, Center, and Marysville, respectively, was described in the same manner. The taxes claimed amounted to $8,400.91, with the additional penalties thereon prescribed by law for non-payment. The defense set up in the answer is stated in the opinion, *infra*. An agreed statement of facts, made and signed by the attorneys respectively of the plaintiff and defendants, shows the following:

"1st. The Saint Joseph & Denver City Railroad Company, by its proper agents and officers, made out and duly verified and filed with the proper person or officer of the county the lists and schedules by them required by the laws of 1874, relating thereto.

"2d. By such statement and list the value of the different classes of property of said company was therein placed as follows: Right-of-way, $2,159.80; rolling stock, $15,016.14; track and road-bed, $108,429.54; personal property, $100: total, $125,705.48.

"3d. The township assessors of said Marshall county failed and refused to list and value such property as so returned, but arbitrarily, and without any notice to said railroad company, and of their own motion, assessed said property in their respective townships, changing the several values as contained in the sworn returns of said railroad company, so that the aggregates stood as follows: Right-of-way, $2,158.50; rolling stock, $14,838.50; track and road-bed, $172,283; personal property, $163: total, $189,443.

"4th. Afterward, the county board of commissioners, sitting as a board of equalization, at a meeting held on the day prescribed by law, of their own motion, and without any special notice to the said railroad company, raised and increased the several amounts so returned as follows: Right-of-

way, $3,006.50; rolling stock, $15,034; track and road-bed, $145,412: total, $163,452.50.

"5th. The said statement so changed and increased in value was then duly forwarded to the state auditor, who, as required by law, laid the same before the state board of equalization, who without any notice to the railroad company, and of its own motion, changed and increased the several classes of property as follows: Right-of-way, $5,100; rolling stock, $25,250; track and road-bed, $221,650: total, $252,000.

"6th. The total valuation of the railroad property denominated 'real property' in the state of Kansas, for the year 1874, was increased by the said state board of equalization ten per cent."

Sections 1 and 2 of chapter 96 of the session laws of 1874, provided, that "on or before the first day of May," "every person, company, or corporation owning, operating, or constructing a railroad in this state, shall return sworn lists or schedules of the taxable property of such railroad," such returns to be made "to the county clerks of the respective counties in which the railroad may be located." The person or company making such return is not required by said chapter to fix the value of the property returned. Section 7 of said chapter is as follows:

"SEC. 7. The county clerk shall return to the assessor of the township or city a copy of the schedule or list of the railroad track and other real estate, and of the rolling-stock and other personal property pertaining to the railroad; and such railroad track and other real estate, and rolling-stock and other personal property, shall be assessed by the city and township assessor. Such property shall be treated in all respects in regard to assessment and equalization the same as other property belonging to individuals, except that it shall be treated as property belonging to railroads," etc.*

This action was prosecuted for taxes assessed and levied upon the real estate belonging to the corporation, and not for taxes assessed and levied upon personal property. Trial at

[*THIS section, (§7,) and §§2, 3, 4, 5, 6, and 11, of said ch. 96, were amended by ch 123, laws of 1875; and both said acts, (ch. 96, laws of 1874, and ch. 123, laws of 1875,) were repealed, and other rules for assessing railroad property prescribed, by ch. 34, laws of 1876.]

March Term 1876 of the district court. The court found that the *Railroad Company* was indebted to Marshall county in the sum of $10,949.15, for unpaid taxes, penalty, costs and interest on said real property described in plaintiff's petition, and that said sum is a first and prior lien on the said real property described in plaintiff's petition, and said real estate is liable for the payment of said sum so found due, with costs of suit; and also, that the moneys in the hands of said *William Bond*, receiver as aforesaid, or that may come into his hands as such receiver at any time hereafter, are subject to the payment of said sum so found due and costs of this action. Judgment accordingly, and defendants bring the case here on error.

*Doniphan & Reed*, for plaintiffs in error.

*Frank W. Love*, and *Everest & Waggener*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action to recover certain taxes levied upon the property of the railroad company for the year 1874. And the first question presented is one of jurisdiction. It is insisted that the district court had no jurisdiction of an action against a receiver duly appointed by the U. S. circuit court. It will be proper to notice first, how the question is presented in the record. There appears a petition filed by the county treasurer, and the joint answer of the railroad company and the receiver. The fact of the appointment of the receiver and his possession of the road, is alleged in the petition. The record discloses no process; and for aught that is shown, the appearance of the receiver was entirely voluntary. No separate plea to the jurisdiction was filed, and the only manner in which the jurisdiction of the court was challenged was by an allegation in the answer that defendant Bond was a receiver appointed by the U. S. circuit court, and as such was an officer of that court, and not subject to suit herein, and a prayer that the suit against him

might be dismissed. Immediately prior to this allegation and prayer was this admission:

"Defendants admit that upon a proper assessment said company would be liable and should properly pay taxes upon the amount of their sworn returns, which is admitted may be adjudged in this case, which would be the sum of $———."

Did the district court under these circumstances err in exercising jurisdiction and rendering judgment against the receiver? We think not. The general proposition is unquestioned, that a receiver is an officer of the court by which he is appointed, amenable to its orders, and to be protected by the power of that court from any interference with the discharge of his duties. This protection is accorded in at least two ways — by punishing for contempt any such interference, or by injunction restraining suit in any other court against him.

The authorities may perhaps not be entirely unanimous as to whether the power of restraint by injunction reaches to all suits against a receiver; and it may perhaps be a question whether, when the object of the suit is merely the establishment of a claim, and does not seek to disturb the possession or question the title or right of the receiver, the claimant may not prosecute his action in a court other than the one appointing the receiver, without danger of punishment for contempt or restraint by injunction. But into a discussion of that question we shall not enter. It will be conceded for this case, that the power of the court appointing a receiver is unlimited for purposes of protection to restrain all suits in all courts against the receiver, and to punish as for a contempt any interference with the receiver by force, or action. But it is also beyond question, that a party may by leave of the court appointing the receiver maintain any action in any court against him. In other words, the court appointing the receiver is not thereby compelled to assume jurisdiction of all controversies to which he may become a party, but may leave their determination to any court of appropriate jurisdiction. The appointment does not *ipso facto* oust all other

courts of their ordinary jurisdiction as to matters in which the receiver may be interested, or which affect the property placed in his hands; it simply secures to that court the power to control at its discretion all such controversies. It may assert its right to take to itself all such controversies, or it may leave them for determination wherever the parties may bring them. The jurisdiction of other courts remains unchanged; but it may reach parties, and compel them to proceed nowhere else than in its own forum. This we think the authorities uniformly concede. Thus, in *Hill v. Parker*, 111 Mass. 508, it is said, that "when the action is brought without applying for such leave, the possession of the receiver is not necessarily a valid defense at law, and the court of chancery, if applied to for an injunction, may in its discretion allow the action to proceed to judgment and to be defended by the receiver." Again, in *Kinney v. Crocker*, 18 Wis. 74: "In such cases it (the court appointing the receiver) will sometimes punish as for a contempt any attempt to disturb the possession of its officer; it will sometimes restrain suits at law and draw to itself all disputed claims in respect to the subject-matter; and sometimes it will allow the suit at law to proceed. But in all these cases it is not a question of jurisdiction in the courts of law, but only a question whether equity will exercise its own acknowledged jurisdiction of restraining suits at law under some circumstances, and itself dispose of the matter involved." In *Blumenthal v. Brainard*, 38 Vt. 407: "A court of chancery will protect a person acting under its process, or authority, in the execution of a decree or decretal order against suits at law, and will compel parties to apply to that court for relief. This protection is accorded by that court to its officers only on their own application, and is granted by the chancellor in the exercise of his discretion, and it is to be presumed that it would be granted in any necessary or proper case for such relief. * * * But we think that the mere fact that the defendants were acting as receivers under the appointment of the court of chancery, cannot be recognized as a defense to a

suit at law for a breach of any obligation or duty which was fairly and voluntarily assumed by them in matters of business conducted or carried on by them while acting as such receivers." In the case of *The Bank v. Risley*, 19 N. Y. 369, it was decided that "a person having a superior legal title or lien ought, it seems, to obtain the leave of a court of equity before attempting to disturb the possession of a receiver. But the question is one of contempt purely, and does not affect the legal right." And in *Aston v. Heron*, 2 Mylne & Keen, 390: "If the misconduct of an officer of the court in executing its orders becomes the subject of civil proceedings before another tribunal, the court may in its discretion either itself take cognizance of the complaint, or may leave the matter to be dealt with upon such proceedings." See also, *Paige v. Smith*, 99 Mass. 395; *Allen v. Railroad Co.*, 42 Iowa, 683; 2 Southern Law Review, New Series, p. 576.

It is evident from these authorities that the question always is, not one of jurisdiction, but of contempt; that the ordinary jurisdiction of other courts is in no manner taken away or affected by the appointment of a receiver; that while the court making the appointment may draw to itself all controversies to which the receiver is a party, it does so by acting directly upon the parties, and not by challenging the jurisdiction of the other tribunals; that while it may so draw to itself all such controversies, it is not compelled to do so, and that not doing so in any particular case, the mere fact of the appointment constitutes no plea to the jurisdiction. Applying these principles to the case at bar, and can there be any doubt of the jurisdiction of the district court? The county treasurer brings his action in that court against the receiver. Whether he first obtained leave of the circuit court whose officer the receiver was, to bring this action in the district court, is not shown. It is nowhere alleged, or denied, that such leave was asked and obtained. It is conceded that the circuit court, if no such leave was granted, could have restrained the treasurer from prosecuting the action, or punished him for contempt. Nothing of this kind was, so far as is shown by the

record, ever applied for by the receiver, or if applied for was refused by the circuit court. "It is to be presumed," says the supreme court of Vermont, "that it (the protection) would be granted in any necessary or proper case for such relief." So it is to be presumed here, that if the circuit court in its discretion deemed it best to draw to itself this controversy, it would have done so. Not having done so, it must be presumed that it deemed it wise to leave the matter for determination to the tribunal in which it was pending. And in this ruling we think the learned justice of the circuit court exhibited that clear sense of justice and propriety which has made his administration of the law in that court an honor to himself, and a credit to the bench; for it seems to us eminently wise, that questions of taxation should be so far as possible left to the determination of the tribunals of the state which imposes the tax. Power in the state to tax the property or securities of the United States, is denied, because the power to tax involves, it is said, the power to destroy. From the same proposition flows the propriety of leaving to the state tribunals questions of the validity and extent of state taxes. And we can but think that considerations of this nature prevented the drawing to itself by the circuit court of the question of taxation involved in this action.

Further, the appearance of the receiver seems to have been voluntary. Can a party come voluntarily into court, and then question its jurisdiction of his person? And again, he admits the validity of the tax up to a certain amount, and consents that judgment may be rendered in this action against him for such amount. Can a party against whom an action is pending come voluntarily into court, admit that part of the claim is due, consent that judgment may be rendered against him for that amount, and at the same time restrict the jurisdiction of the court to inquire and determine as to the validity of the entire claim? It seems to us most clearly not. The district court had jurisdiction, and it did not err in rendering judgment by reason of any lack of jurisdiction.

The other question, that of the validity of the tax, seems

to be settled by the decision in the case of the *K. P. Rly. Co. v. Wyandotte Co.*, 16 Kas. 587; or at any rate, controlled by the views expressed in the opinion in that case. The objections to the validity of this tax are, that the assessors did not accept the valuation returned by the company, and that the board of equalization raised such valuation without any personal notice to the company. Neither of these objections is well taken. The property in this case was real property; in that, personal. The distinction between the manner of assessing the two kinds of property was pointed out in that opinion. The valuation of personal property, as returned by the owner, is conclusive until corrected by proceedings before the county clerk or commissioners, of which the owner must receive notice; while the valuation of real estate is fixed in the first place by the assessors, and may be changed by the board of equalization at a regular meeting, of which public notice has been duly given. It is conceded that such notice was given. The act of 1874 provides that railroad property "shall be treated in all respects in regard to assessment and equalization the same as other property belonging to individuals." Laws of 1874, p. 149, § 7. This provision seemed to us decisive of the question in that case, and it must be held as equally controlling here. The tax appears to be valid, and the judgment must be affirmed.

All the Justices concurring.