MEREDITH VILLAGE SAVINGS BANK v. WILLIAM A. SIMPSON, *et al.*

1. RECEIVER; *Power of Court.* The appointment of a receiver by a district court secures to that court the power to control, at its discretion, all controversies which affect the property placed in his custody as such receiver.

2. —————— *Protection of Such Officer.* A court of equity will, on proper application, protect its own receiver, when the possession which he holds under the authority of the court is sought to be disturbed. It also has the power to reach parties to actions affecting property placed in the hands of its receivers, and compel them to proceed nowhere else than in its own forum.

3. —————— *Facts Showing No Error.* Where M. proposes to bring an action in which he desires to join C. in his official capacity as receiver as a party defendant, and applies to the court appointing the receiver for leave so to do, and the court grants such permission, but requires the action to be brought and tried in its own forum, and in no other court, *held,* not error.

4. PERMISSION TO SUE RECEIVER, *Rightly Revoked.* Where such proposed action is then brought in the court granting the permission to sue the receiver, and M., the plaintiff, presents his petition and bond for a

removal of the cause to the circuit court of the United States for the district of Kansas, *held*, not error for the court, of its own motion, to revoke the order granting permission to sue the receiver, and dismiss the action pending against him.

### *Error from Douglas District Court.*

ON December 10, 1877, *William A. Simpson* commenced an action against *Joseph J. Crippen*, in the district court for Douglas county, for an accounting and for a dissolution of their partnership; and on the same day, by an order made in the action by the judge of said district court, James S. Crew was appointed a receiver of the partnership, to take possession of the partnership property and pay the partnership debts.

On February 28, 1878, *The Meredith Village Savings Bank* filed a petition in said action, representing that it was a private banking corporation, organized under the laws of the state of New Hampshire, located and having its place of business at the village of Meredith, in said state; and that the said *William A. Simpson* and *Joseph J. Crippen*, on December 10, 1877, and for a long time prior thereto, were partners, doing a banking and collection business under the name of "The Simpson Bank," at the city of Lawrence, in this state.

In said petition it was further represented, that said *Simpson* and *Crippen*, as the agents of the petitioner, collected certain moneys due the petitioner, to wit, the sum of $1,556.22, and that said sum of $1,556.22, the property of the petitioner, passed into the possession of said James S. Crew, as receiver, with the assets of said partnership; and that the above-named *William A. Simpson, Joseph J. Crippen*, and James S. Crew, had refused to deliver said money to the petitioner on demand therefor. Wherefore, the petitioner prayed for leave to join said receiver with said *William A. Simpson* and *Joseph J. Crippen* in an action for the recovery of said property.

Afterward, on February 28, 1878, on the hearing of the petition, the district court found that the controversy between the parties could be best determined by an action, and that the receiver might be made a party thereto; and ordered, the

said receiver consenting, that permission be given to the petitioner to join the receiver as a defendant in such proposed action; and further ordered, over the exceptions of the petitioner, that such permission should extend only to an action to be brought and tried in said district court, and in no other court.

The plaintiff in error avers, that there is error in said record and proceedings, in this:

1. That the said district court erred in refusing the said Meredith Village Savings Bank its choice of a forum wherein to bring its action.

2. That the said district court erred in restricting such permission to sue to an action to be brought and tried in said court and in no other court.

3. That the said district court erred in denying to the said Meredith Village Savings Bank its lawful and constitutional right to bring and try said action in some other court.

On March 20, 1878, the said *Meredith Village Savings Bank* commenced an action against the said *William A. Simpson* and *Joseph J. Crippen*, (partners, doing business under the name of The Simpson Bank,) and James S. Crew, as receiver of said partnership, in the district court for Douglas county, to recover possession of certain personal property, or the value thereof if a delivery could not be had, and for an order on the receiver for a delivery of said property, or directing him to pay the value thereof, with statutory damages for its detention.

On June 1, 1878, the *Meredith Village Savings Bank* filed a petition and bond in said action, for the removal of the cause to the circuit court of the United States for the district of Kansas, representing that it was a citizen of the state of New Hampshire; that the defendants were citizens of the state of Kansas; that the amount in controversy, exclusive of costs, exceeded the sum of $500; that said cause had not been tried and was not triable at the then present term of said district court, and praying the district court to accept the said surety and bond, and make the order of removal re-

quired by law, and cause the record of said suit to be removed into said circuit court.

Afterward, on the hearing of the petition, the district court, on its own motion and not at the request of the receiver, made an order over the exceptions of the said *Meredith Village Savings Bank,* revoking the order before granted to the *Meredith Village Savings Bank* for leave to sue the said receiver, James S. Crew, and made the further order over the exceptions of the *Meredith Village Savings Bank,* dismissing the action as to the said Crew, at the cost of the plaintiff.

The plaintiff in error avers that there is error in said record and proceedings, in this:

1. That the said district court erred in revoking its former order, granting permission to sue said receiver.

2. That the said district court erred in ordering a dismissal of the said action against said James S. Crew, as receiver.

3. That the said district court erred in making said order of revocation and dismissal on its own motion, and in entering judgment against said plaintiff for costs.

4. That the said district court erred in entering said order of dismissal, for that the said court at the time of making said order had no jurisdiction of said cause or of the parties thereto.

Additional matters are set forth in the opinion. Plaintiff in error, plaintiff in the court below, brings the action here on error for review.

*T. A. Hurd,* and *O. A. Bassett,* for plaintiff in error:

Not only had the plaintiff in error a right to bring the action, but it had a right to select the forum in which to bring it, limited only by the jurisdiction of the forum selected. Being a citizen of the state of New Hampshire, and all of the defendants citizens of this state, with an amount in controversy, exclusive of costs, exceeding the sum of five hundred dollars, the plaintiff might have brought the action in the circuit court of the United States, and we claim that

27— 22 KAS.

this might have been done without reference to any permis-
sion from the court appointing the receiver. (19 Kas. 231.)
If permission from that court was necessary, it must be con-
ceded that there might have been a denial of justice to the
plaintiff, and its rights have been made wholly dependent
upon the caprice of the judge. But if it is admitted that
the action might have been brought without such permission,
it may be claimed that the party bringing it would be liable
to punishment for contempt. We confess to a slight appre-
ciation of the distinction between the absolute denial of a
right to enforce a pecuniary obligation, and a pecuniary pun-
ishment for attempting to enforce it.

But assuming, for the purposes of this argument, that per-
sons holding claims against an estate over which a receiver
has been appointed may obtain relief by a petition direct to
the court, or by an action at law, and assuming that an ac-
tion at law cannot be brought against the receiver without
first obtaining permission from the court by which he was
appointed, then upon the submission of the question to the
court as to the form of the remedy, some judicial discretion,
perhaps, might be exercised. But if the court, upon such
submission, should be of the opinion that the proper remedy
was by action, and should find that the controversy between
the parties could be best determined by an action, the court
would have no alternative but to make the order giving the
claimant permission to sue the receiver; any different order
in such a case would be an abuse of judicial discretion, and
this court has frequently said, whenever the district court,
having discretionary power in any case, has manifestly abused
its discretion, that on presentation of the case here this court
would not hesitate to correct such abuse of the court below.

But we are not called upon to argue here the question as
to the form of the remedy; for, before the commencement
of any proceedings, the plaintiff in error presented to the
court by which the receiver was appointed an application for
leave to make him a party defendant to the proposed action,
showing the nature of the claim and the relief demanded,

and the receiver, being present in court by his attorney, consented that the application might be granted. This consent was equivalent to a voluntary appearance to the action, so far at least that the receiver could not afterward be heard to complain that he had been sued; yet the court, on the hearing of the application, apparently did not rely alone on the consent given by the receiver, but found as a matter of practice that the controversy between the parties could be best determined by an action, and made the order accordingly. The court made the order applied for, and here exercised its discretion so far; but we claim that, under the preceding finding, the court had no alternative but to make the order that the receiver might be made a party defendant to the action, and that any other order would have been a manifest abuse of judicial discretion.

But the court did not stop here. It assumed in part the management of the case by directing where the proposed action should be brought and tried. It appears that this part of the order was made by the court upon its own motion; it certainly was not on the motion of the claimant, and the record fails to show any motion upon the part of the receiver, but as we shall have occasion to refer again to this novel practice, as it appears subsequently in the record, we will discuss the result here rather than the peculiar manner by which it was arrived at. We assert that this restriction in the order of the court was a denial of justice to the claimant. It was a denial of justice because it was the denial of a right. The claimant had a right to bring the action in any county in the state in which the defendants or some one of the defendants resided or might be summoned, or to change the venue, if some good cause existed why the case could not be fairly or impartially tried in that county, or in that district. (§§ 55, 56, Code.) It may be answered that the order did not preclude a change of venue upon a proper showing. Perhaps it did not in terms, yet its evident tendency is in that direction, and it requires no forced construction of lan-

guage to conclude that the order was intended to deny even a change of venue.

Admitting, however, that the order did not deny the right to a change of venue, and was not intended to deny such right, upon a proper application, it did require the action to be brought in the state court, if brought at all, and did by its terms and intent deny the claimant's right to bring the action in or remove it to the circuit court of the United States. The action is one of which the circuit court of the United States would have had jurisdiction, if brought there. The necessary requisites of citizenship and amount in controversy existed, and by its order the state court assumed the denial of not only a lawful but a constitutional right. The judicial power of the United States extends to controversies between citizens of different states. (Const. U. S., § 1, art. 3.) And the circuit court of the United States has jurisdiction of such controversies when the matter in dispute, exclusive of costs, exceeds the sum or value of five hundred dollars. (Rev. Stat. U. S., § 629.) These constitutional and lawful guaranties cannot be impaired by state constitutions or state legislative enactments. And if the people in their sovereign capacity, or by their lawful representatives, cannot do this, on what authority can it be said that the creature of the state constitution, deriving all his powers from state legislative enactments, may impair them ?

It may be urged that, notwithstanding our exceptions to the restrictive clause contained in the first order, we cannot avail ourselves of these exceptions because the plaintiff did afterward submit to the order and to the jurisdiction of the state court by bringing the proposed action in that court. We deny that the commencement of the action in the state court is a waiver of the exceptions. There may be many reasons for this: one, that having an action pending, the claim might not be barred by the statute of limitations before a reversal of the error could be had; another, that the plaintiff might not be subjected to the many annoyances which in-

genious counsel might devise in the nature of harassing, vexatious and expensive actions, proceedings and prosecutions; and so on, *ad infinitum.* But we say, further, that the bringing of the action in the state court did not waive the exceptions, for the exceptions are not only to the restriction that the suit should be brought in the state court, but that it should be tried in that court and in no other court. This latter clause is a restriction on the right of removal, and we claim a right to have that question determined. We insist, further, that we have not waived anything; that we have a right to a review of all the errors complained of, so that it shall not be said that a failure to prosecute a petition in error thereon has left the order standing as an adjudication of the rights of the parties.

To those accustomed to a distinct law and equity practice, some confusion is necessarily brought by the doing away of all distinctions, not only in the forum, but in the forms of procedure, and in uniting in one action and determining by one suit all matters in dispute between the original parties to the controversy; but as a matter of constitutional right cannot depend upon forms of legislative prescription, it is clear that whenever such forms conflict with or impair some constitutional right they must be disregarded. The practice of the circuit court of the United States, sitting as a court of equity in like cases, cannot be cited here as authority to sustain the action of the state court, for there is no right of removal from that court, and no constitutional or statutory provision exists inhibiting that court from requiring parties to bring like controversies before it. Nor can the practice of state courts where there is a distinct law and equity practice prescribed as to their powers relatively toward each other, be cited as authority here for a like purpose, for the wrong here complained of is the denial of a right derived from an authority which is higher than state constitutions or state laws. Neither will it avail the defendants to plead a conflict of jurisdiction; for the plaintiff's action is one for the establishment of a right which may be ascertained with-

out in any manner interfering with the manual possession of the receiver.

After the commencement of the action in the state court, the plaintiff in error filed in the clerk's office in that court, and as a part of the record of the case, a petition and bond for the removal of the suit to the circuit court of the United States for the district of Kansas. The petition and bond were filed pursuant to the plaintiff's claim of right, under the laws of congress. (Rev. Stat. U. S., § 639), and were then presented to the state court for the customary order of removal, not because such an order was necessary, but merely as an act of courtesy to the court in which the action was pending, that it might have actual notice of the filing of such petition and bond, and that its rightful jurisdiction had ceased. (42 Mo. 153.) If the case was within the act of congress, if the petition for removal was in due form, if the required surety or bond was offered, the state court had no alternative, but must accept the surety and proceed no further in the case. Under the circumstances, the state court had no power to refuse the removal, and could do nothing to affect the right of the petitioner. No order for the removal was necessary, and every subsequent exercise of jurisdiction by the state court was *coram non judice*. (16 Pet. 104.) It is admitted that a case might arise (if the petition for removal in connection with the pleadings did not show the case was removable) when the jurisdiction of the state court would not be ousted; but in general the circuit court is vested with the jurisdiction of the question whether the cause was removable, and the opinion of the state court on that question does not seem to be important.

But the state court, in the case at bar, did assume to exercise jurisdiction of the action after the petition and bond were filed for removal, and after they were presented to the court for its information. We use the word "assume" in this connection advisedly, for the record reads: "And the court of its own motion," not on the motion of the receiver, or of any party to the action, but "the court of its own motion revokes

the order hereinbefore granted to the plaintiff to sue the said receiver, James S. Crew;" and this is not all that the court assumed to do, for the record proceeds: "and doth dismiss this action as to the said Crew, at the cost of the plaintiff." Whether the court could make such an order in any stage of an action, not being moved thereto by a party to the record, or whether any such practice was ever before known, we shall not here discuss; for any order, except perhaps an order accepting the surety and removing the cause, came too late. The opinion of Mr. Justice Strong, in the case of *Taylor v. Rockefeller*, decided in the western district of Pennsylvania, and reported in the Central Law Journal, Nov. 1, 1878, at page 349, is decisive of this point.   He says:

"The act of congress declares that after the petition and bond are filed, the state court shall proceed no further in the suit.   The petition is filed in the suit.   It is thus made a part of the record, and by the act of filing the suit is withdrawn from the jurisdiction of the state court.   It is to be observed that no order of the state court for a removal is necessary—certainly none since the act of 1875.   Nor is any allowance required.   The allowance is made by the statute."

With this review of the case at bar, in the light of the argument presented, aided by the authorities bearing upon the subject, we believe that sufficient has been shown to warrant a reversal of the several orders for the manifold errors alleged.   In our examination of the questions involved, we have with pleasure noted the tendency of the state courts, where all distinctions between actions at law and suits in equity and the forms of all such actions and suits have been abolished, to deny that "*Boni judicis est ampliare jurisdictionem,*" and to insist that doubtful powers shall not be exercised.   Almost every important power exercised by the earlier courts of chancery was based upon the assumption of an inadequacy of remedy in the courts having common-law jurisdiction, and under the plea, "*Nullus recedat e curia cancellaria sine remedio,*" the chancellors extended their jurisdiction, and increased their powers "for the advancement of justice;" and now the courts of equity indulge in the illu-

sion that "antiquity did nothing without a good reason," forgetting that "reason is the soul of the law, and when the reason of any particular law ceases, so does the law itself." To the same effect, we say that when the necessity for a usage ceases, notwithstanding its antiquity, so the usage itself should cease.

*S. O. Thacher*, for defendant in error James S. Crew:

The seven different assignments of error are really comprehended in these two, viz.: First, the court below erred in restricting the plaintiff in error to bring its proposed action in the court appointing the receiver, "and in no other court;" second, the court erred in the subsequent proceedings in revoking this order and dismissing the action so permitted to be brought in the state court, when the plaintiff presented its petition for a removal of the same to the federal court. These two questions embrace all the questions that are in the case.

1. I do not follow the brief of plaintiff in error over the wide field it seeks to explore and shed light upon. Many of its statements are undoubtedly true, since they seem to be reiterations in another form of many requirements and statements of the code.

It seems too clear for much more than mere statement, that the receiver is an officer of the court appointing him. His possession is that of the court, and all his actions and doings are under the complete and manifest control of the court. He can neither sue nor be sued, except under the direction of the court. He can take no step without express sanction, and a failure to seek the direction of the power appointing him, falls in its consequences upon himself. He cannot incur expense; he cannot consent to the bringing of actions against himself, nor refuse to defend them when properly brought, without subjecting himself to a penalty. He is the mere hand of the court, doing what he is directed, and no more. Being told to bring an action in one court, he cannot bring it in another; being told to defend an action in one

court, he cannot appear in another.   These are truisms.   As was said by this court in *Railroad Co. v. Smith,* 19 Kas. 229, 230:

"But it is also beyond question that a party may, by leave of the court appointing the receiver, maintain any action in any court against him.   In other words, the court appointing the receiver is not thereby compelled to assume jurisdiction of all controversies to which he may become a party, but may leave their determination to any court of appropriate jurisdiction.   The appointment does not *ipso facto* oust all other courts of their ordinary jurisdiction, as to matters in which a receiver may be appointed, or which affect the property placed in his hands: it simply secures to that court the power to control at its discretion all such controversies.   It may assert its right to take to itself all such controversies, or it may leave them for determination wherever the parties may bring them.   It may reach parties and compel them to proceed nowhere else than in its own forum.   This we think the authorities uniformly concede."

In no respect did the district court transcend the bounds above set forth.   It granted permission to the plaintiff to bring its action in the court appointing the receiver, and in no other.   It maintained its control from the beginning over its officer, and the funds and property in his charge.   The order allowing the receiver to be sued was made within all the rules defined by this court, as well as the current decisions of all courts.   It is possibly of no moment, but I add that the order confining the litigation to the state court was made by the court after a full discussion of the matter both on the part of the counsel for plaintiff and of the receiver before the court, the court denying the request of the plaintiff for leave to bring the action in such court as it should deem best, for this, among other reasons, as announced from the bench, that if the control of the receiver was permitted to be transferred to the federal court, that court could draw to itself, in enforcing its decree, the entire cause in which the receiver was appointed, or award to the litigants in that court all the funds in the hands of the receiver.   In *Railroad v. Smith,* this court alluded to the practice in the circuit court

of the United States for the district of Kansas. To what is there stated it may be added that it is the uniform practice in that court to confine to its own adjudication all matters of large moment wherein any one of its receivers may be concerned, and it only permits them to be sued in a state court where the amount involved is petty, and in no case can materially affect the funds in the hands of the receiver. Most of these officers are appointed in railroad foreclosure cases.

That the court may direct in what forum its receiver may be sued, and may affix this limitation to its permission to sue him, is as firmly settled, on principle and authority, as any proposition of law that can be stated. Neither of the learned counsel for the plaintiff in error has cited a single contrary authority, and a question of law must be very·clear on which there cannot be found two differing decisions or *dicta*.

2. To my mind the power of the court to designate the forum in which its receiver may be sued, involves as an inevitable corrollary the power to revoke that permission when it is sought to be abused or trampled under foot by the party using it. In the very necessity of the case, from the inherent dignity and self-respect of the court, it must have the right to visit summary rebuke upon a litigant trifling with its order in that regard, and treating with contempt its leave to sue one of its officers. Can it be imagined how a court can be more summarily disrespected than to attempt to do what the plaintiff in error did in this case? It obtains an order to sue the receiver in the court granting the order, and "in no other court." It acts under that order by bringing the permitted action, and then, in violation of the spirit if not the exact letter of the license, without seeking its revocation or modification, treats it as a nullity, and contemptuously proceeds to do against the receiver that which it was clearly forbidden to do. For there can be no difference between the proposed action of the plaintiff in error and commencing its action *de novo* in the federal court. Either course produces the same result, viz., overthrows the limitation put upon the permission to sue the receiver; and each is obnoxious to the

charge of a wanton and open disregard of a plain and reasonable order of the court. Now when this attempted violation of its order was brought to the court's attention by the presentation to it of the petition and bond for removal, when the court was notified that its order in the premises was treated as though it were waste paper, idle lines upon record, binding nobody, and only worthy of contemptuous silence, could it do less than it did do? The more serious inquiry is, whether it did enough to maintain the respect and honor due to every court. The light penalty of revoking the license and dismissing the action, it may well be said, was the very least the plaintiff in error could expect from its open affront. The court would have been justified in visiting a much severer penalty on all the parties so offending its order. The power to stop proceedings in court in violation of the court's order, resides in every court. The record does not show any offer on the part of the plaintiff in error to withdraw its proposed breach of the court's order, but rather the intention to persist in it.

With such an attitude before the court, how can it complain of the revocation of the discretionary order it had sought and obtained from the court? To have permitted the plaintiff in error to proceed farther would have been a surrender by the court to a litigant of its dignity and self-respect. It would have been saying, "Though your proposed act has been in terms forbidden by the court, yet you may go on with impunity." The plaintiff in error complains that the court below refused to permit it to violate its order, and to treat with indifference an injunction it had heretofore granted.

.3. The permission to sue was coupled with an imperative injunction. This was sought to be overridden by the plaintiff in error, and it complains that the court refused its consent to such a course; for it will be observed that the order permitting a suit against the receiver was also equally prohibitive against any other forum being employed than the one mentioned. This prohibition, this injunction, the plain-

tiff in error treated with the utmost negligence. It said to the court: "This prohibition you have made, I fling aside as worthless; it is not entitled to respect; it is hereby thrown back into the face of the court." Is it supposable that any court in the land would for a moment tolerate such a violation of its order by a party standing before it and venturing upon such an unconcealed contempt for its mandate? To dismiss the cause, seems a light penalty for such an offense.

4. But it is insisted that filing the petition and bond for removal, at once deprived the state court of jurisdiction, and that the court below had no power to further act in the premises. To this it seems only necessary to say, that the action was one brought by permission, and was not an ordinary suit, and the consent of the court was absolutely essential to the plaintiff in error. The receiver is a part of the court appointing him; his possession is that of the court. An attempt to disturb the receiver touches the court itself; and when a party desires to do this, he must first obtain the consent of the court. That is what unquestionably led the plaintiff in error to present its bond and petition to the court below. If the cause was transferred at the moment the petition was filed, then what is there for plaintiff in error to complain of? Its cause is in the federal court, and any order of the district court is a nullity. But its cause as to the receiver could not be got into the federal court without leave of the state court, and it was this permission that was sought to be obtained in this indirect and uncertain method—saying to the court, "You have permitted your officer to be sued in your own court, and that, though you enjoined that the suit should not be brought elsewhere, permits the plaintiff to go where he pleases with the action." Now it is manifest the state court has a right in all these cases of removal to pass upon the petition, and see whether it presents a case contemplated by congress. In *Railway Co. v. Ramsey*, 22 Wallace, 322, the court say, (page 328):

"To obtain a transfer of a suit, the party desiring it must file in the state court a petition therefor, and tender the re-

quired security. Such petition must state facts sufficient to entitle him to have the transfer made. . . . If upon hearing the petition it is sustained by the proof, the state court can proceed no further."

Again, in *Insurance Co. v. Pechner*, 95 U. S. 183, the court held, (p. 186,) that until a party has shown to the state court that it has no right to "proceed further with the cause," that court may proceed with the action. "Having once acquired jurisdiction, the court may proceed until it is judicially informed that its power over the cause has been suspended." See, also, *Gold Washing Co. v. Keyes*, 96 U. S. 199–202, wherein the principle laid down in *Insurance Co. v. Pechner* is emphatically reaffirmed. Hence, it is clear that the state court has the right to look into the case made for a removal and see whether it comes within the statute. Now the receiver was a party defendant in this action by virtue of a certain order permitting him to be sued in a certain manner; he was in court as a party under that license and *no other*. When the petition for removal was presented to the court, it saw at once an attempt to override its order, or, to say the least, an attempt to obtain indirectly a revocation of its former order. The matter, at the very best for plaintiff in error, stood as a demand upon the court as a right to permit its officer to be sued in another forum. The receiver was a defendant as a matter of grace on the part of the court. The court was permitting the form of an action to judicially determine the right of the plaintiff in error to a fund in the possession of the court. It could have disposed of the question by a motion, and by ordering an issue to be made up thereon, but it saw fit to permit the matter to flow into the form of an action. Yet the case was none the less a proceeding, so far as the receiver was concerned, in the original action in which the receiver was appointed. If the plaintiff in error had appeared in the original action, and filed its motion to be paid its demand out of the funds in possession of the court, it would have had no claim to have transferred such a motion to the federal court, and a petition

and bond filed by it for that purpose would have been of no avail. But it stands no better because the court permitted the same question to be disposed of by set and formal pleadings at its own bar. For a somewhat full review of the right and duty of the state court to inspect the record to ascertain whether the petition for removal comes within the provisions of the laws of congress, see a case duly reported from the supreme court of Alabama, Central Law Journal of February 21, 1879, p. 151.

The opinion of the court was delivered by

HORTON, C. J.: This action was brought in the court below to recover possession of certain personal property, consisting of United States and national bank notes of the value of $1,556.22, alleged to have been received by W. A. Simpson and J. J. Crippen, as the agents of the said savings bank, and as the property of said bank. The petition further alleged, that Simpson and Crippen received the bank notes in 1877, while copartners in business under the name of "The Simpson Bank," of the city of Lawrence, in this state; that on December 10th, 1877, the said James S. Crew was duly appointed the receiver by the district court of Douglas county in an action brought by the said W. A. Simpson against J. J. Crippen for an accounting between the partners and a dissolution of the partnership; that said savings bank was entitled to the immediate possession of the property, and that the defendants unlawfully detained the same. The action was not in form prosecuted against the receiver as an individual, but named him as receiver appointed by the said district court, and in custody of the partnership property. At the commencement of this proceeding, the plaintiff in error presented to the court by which the receiver was appointed an application for leave to make him a party defendant to this action. The court granted the motion, the attorney of the receiver consenting, but further ordered that such permission to join the receiver as defendant should extend only to an action to be brought and tried in said district court.

Afterward, the pleadings in the case were made up, and then the plaintiff in error presented its petition and bond for a removal of the cause to the circuit court of the United States for the district of Kansas. Thereupon the court revoked the permission before granted for the plaintiff to sue the receiver, and dismissed the action as to Crew, at the costs of such plaintiff.

The various assignments of error alleged in the petition in error are embraced in two inquiries: *First*, Did the court below err in restricting the plaintiff in error in the prosecution of his cause of action to the court appointing the receiver? *Second*, Did the court err in revoking this order and dismissing the action against Crew?

The determination of the first question is mainly decisive of the second, because if the court had the power to designate the forum in which its receiver was to be sued, it clearly had the authority to revoke its permission when it was sought to be evaded or abused. The proceeding instituted by the plaintiff not only questioned the title or right of the receiver to the property claimed, but sought to disturb the possession, which he held under the authority of the court. A receiver of a court of justice has been well said to be the arm of the court by which he is appointed—a part of the court itself. He is the agent of no one except the court by which he is authorized to act. One court having custody of property through its receiver, cannot admit that another court, in defiance of its orders, has power to define what are his duties with reference to such property. To admit this, is substantially to say that one coördinate court can sue another. This cannot be done. The rule stated is established by so many authorities that citation is scarcely necessary. Every consideration of economy, of the prevention of vexatious litigation and conflicts of jurisdiction would indicate the importance of protecting the exclusive possession of the receiver by an inflexible rule of law. Even the cases of *Kinney v. Crocker*, 18 Wis. 74, and *Allen v. The Cent. R. R. Co. of Iowa*, 42 Iowa, 683, which assert the right in some actions to sue receivers

without leave to prosecute being first obtained of the court appointing them, concede "that a court of equity will, on proper application, protect its own receiver, when the possession which he holds under the authority of the court is sought to be disturbed."

The appointment of Crew as receiver of the effects and property of the partnership in the action of Simpson against Crippen, by the court below, secured to that court the power to control at its discretion all controversies which affected the property placed in his custody. It thereafter had the right to take to itself all such controversies, and compel parties to proceed nowhere else than in its own forum. (*Railroad Co. v. Smith*, 19 Kas. 229.)

In this case the plaintiff in error very properly asked permission of the court, before bringing the action, to join the receiver as a defendant in the case. The permission was granted; and within the principles above stated, the court, to maintain its control over its officer and the property in his charge, restricted the action to its own jurisdiction, and denied the plaintiff authority to prosecute its agent in any other court. No error was thereby committed. If it had the right to take to itself the controversy over this property, it surely had power to make the order complained of. In fact, it adopted the practice generally pursued. In most cases the court appointing the receiver, upon motion or in any other mode it may think best, hears the complaint and defenses, and upon the issue made and the proof adduced on both sides, grants or denies the relief, as the court may upon the issues made and the proof under the rules of law deem right and proper. Of course, this court would have had the right to review on error any of the proceedings of the inferior court, if the action had been prosecuted therein under the permission granted, as this court had appellate jurisdiction, and the order of that court cannot be construed or assumed to interfere with the power granted to the supreme court.

The power of the district court to take to itself all controversies affecting the property placed in the hands of the re-

·ceiver, and compel parties to proceed nowhere else than in its own forum, must necessarily include the power exercised by it in dismissing the case against Crew. It granted the permission in the first instance, and it had the right to revoke the permission when it was sought to be abused. A ·court ought never to permit its process to be improperly used, nor allow its orders obtained for one purpose to be wrongfully applied to a different and contrary purpose. The ·court granted permission to join the defendant in an action in its own forum, and the plaintiff seeks to make this order the basis to oust the court of its jurisdiction, or a bridge to pass over into another forum. The order was granted that the district court might assume jurisdiction of the controversy between plaintiff and the receiver, and the plaintiff seeks to abuse the order to transfer the controversy to another jurisdiction. This is unfair to the court. If sustained, it defeats the very purpose for which the permission was given. The theory of counsel to that end is unsound. It rests upon no ·stable foundation. Even assuming that the plaintiff had the right to bring the action without any previous assent having been given, within *Railroad v. Smith,* supra, the district court, with all the parties before it, had the power to compel the plaintiff to proceed nowhere else. Counsel contend, how-·ever, that the court had no power to refuse the removal to the United States circuit court, and could do nothing to affect the right of the petitioner. Certainly the court had the right to look into the case when the petition and bond were presented for acceptance and see whether it came within the statute. (*Goddard v. Bosson,* 21 Kas. 139.)

When it made this examination, it at once ascertained that the case within the practice and decisions of the federal courts, as to Crew, was not removable. It has been the fre-·quent and uniform ruling of the federal courts, that a suit cannot be commenced against a receiver without leave being first obtained from the court appointing such receiver. At the time of the filing of the petition and bond for removal, ·consent had been obtained to sue in the district court of

28 —22 KAS.

Douglas county, but this consent was burdened with the limitation that the controversy with the receiver was to be settled in that court, subject, of course, to appeal on error of the proceedings to the appellate court. The permission to sue was coupled with an imperative injunction not to go to any other court. As the court had the power to affix to the permission the injunction, the case could not be removed, as to the receiver, without the consent of the court granting it. The case, under the circumstances, was not an ordinary action, and the consent of the court was absolutely essential for the prosecution of the action in the circuit court, by the well established rules again and again announced by the federal courts.

In the absence of this consent, any action or order of this court, even if favorable to the plaintiff in error, would avail him nothing, as the rules we have stated pertaining to suits against receivers in the federal courts are strictly observed by them.

The judgment of the district court must therefore be affirmed.

All the Justices concurring.

