CASE No. 1074.

### EX PARTE BROWN AND WIFE ET AL.

GIBBES v. GREENVILLE AND COLUMBIA RAILROAD COMPANY.

STATE, *EX RELATIONE* ATTORNEY-GENERAL, v. SAME.

1. Pending action to subject a railroad to sale for the payment of its mortgage debts, the president and directors of the company were ordered to continue in the possession and management of its property of all kinds under the order of and subject to the court; and such officers were in like manner to continue to conduct and carry on the business of the company and to make report to the court, when required, of the condition of the property of the company, of its earnings and expenditures, to the end that such orders might be moved for as were necessary for the protection of the property of the company and the interests of all parties concerned. *Held*, that by this order the president and directors, and their successors in office, were constituted receivers of the court. *Fifty-four Bonds Case, ante p.* 304.
2. A change of incumbent in the office of railroad receiver does not affect the status of claims against the property arising during the receivership.
3. Passengers over a railroad and an employee of the company, when entitled to damages for injuries received while the railroad is operated by a receiver, should be paid out of the fund in court realized from the earnings of the road during the receivership, in preference to mortgage or other debts existing at the time of action brought.

Before HUDSON, J., Richland, July, 1880.

In this case, Hon. A. P. Aldrich, of the Second Judicial Circuit, and Hon. T. B. Fraser, of the Third Circuit, sat in the places of Chief Justice Simpson and Associate Justice McGowan, who had been of counsel in the original causes.

These were four petitions to be paid out of the fund in court, which was realized from the earnings of the Greenville and Columbia Railroad Company, while in the hands of the receiver, who was appointed under the actions of James S. Gibbes and others, creditors, against the Greenville and Columbia `Railroad Company, and the State, *ex relatione* the Attorney-General, against the same corporation. *Ex parte* E. M. Brown and Emily Brown, his wife; *Ex parte* William Cummings; *Ex parte* William H. Redwood, were petitions for the payment of judgments obtained by them against the railroad company in May, 1878, for injuries received by them while passengers over the road on June 1st, 1874, resulting from the breaking of a trestle. *Ex parte* Elizabeth J. Layne, administratrix of the estate of John Y. Layne, deceased, was for the payment of balance of $1140 and interest due on judgment for $2000, taken by her against the company by consent, in September, 1877, damages for the death of her husband and intestate, an engineer on the road, his death being caused by the bursting of a defective boiler, on January 23d, 1874. Other facts are stated in the opinion of this court.

The petitions were filed by leave of court and referred to N. B. Barnwell, Esq., master, who made an unfavorable report. Exceptions were taken thereto by the petitioners, and the cases were heard by Judge Hudson, whose decree, after a statement of facts, was as follows:

The view I entertain of the law of the cases renders the payment or not of earnings to the interest on the mortgage debt, in preference of these judgments, not decisive of the issues; and although it may be that the interest was in fact not paid from earnings, but from funds otherwise raised, as the counsel for creditors claim they can show, yet, for the purposes of this contention, I am willing that it be conceded by the court that between the years 1874 and 1878, a portion of the earnings of the road was applied to payment of interest on the mortgage debt, sufficient to have paid all the claims of these petitioners. If the petitioners have a superior claim upon the fund such payment was a diversion; otherwise, not.

With this statement of facts we proceed to examine the issues

raised by the exceptions to the master's report. The whole matter may be resolved into a single question, viz., has a passenger or an employee who holds a judgment for damages to the person against an insolvent railroad company, which has been placed in the hands of a receiver, a right to be paid out of the net earnings of the road in preference of senior mortgage creditors? Is the legal or equitable right to this fund set up by such a judgment creditor superior to the legal and equitable right of a prior mortgage creditor?

The petitioners rest their claims upon a supposed prior and superior equity to this particular fund, contending that whilst the mortgagees have a superior lien upon the property, they have a superior equitable lien upon the net earnings; that they do not stand upon the footing of ordinary and general judgment creditors, but of creditors whose claims are so peculiarly meritorious that a Court of Equity will, in the exercise of extraordinary power, displace existing liens and subordinate superior legal rights to these judgment claimants.

That they ought to be paid no one can deny, and that they will be paid is a fact, provided the assets of the corporation, in a due course of administration by the court, are sufficient. But if the assets of the company in the possession of the court, at the end of a legal and equitable administration, should fail to pay these debts, the petitioners are in no worse condition than the multitude of creditors who will have to go without pay. The question is not one of liability. It cannot be denied that a company, while managed by its own direction, is liable to demands of this kind, and where managed by a receiver as an officer of the court, it is equally liable out of its property to respond to unpaid claims of this kind, whether the cause of action arose before or after the judgment of insolvency and appointment of a receiver; whether the court may be solvent or insolvent, whether under its own directorship or the control of the court, does not affect the question of liability, but affects only the mode of establishing the debt and enforcing its payment.

So that whether a receiver can be sued in a court of law upon a demand of this kind, what is the effect upon the parties if they elect to sue the company, instead of going against the property

of the company in the hands of the court; what is the effect upon their rights, whether the cause of action arose prior or subsequent to the appointment of a receiver, all such questions, in the discussion of some of which much learning has been displayed by our judges and text writers, do not, in my opinion, greatly affect the fundamental issues in these cases. The main question is one of priority and not of liability. The petitioners have a right to be paid, they ought to be and will be paid, if the property be sufficient; but they claim a right prior to that of mortgage creditors, to be paid out of the income in the hands of the receiver; and that claim of priority we will proceed to examine. When a railroad corporation becomes insolvent, its property may be taken out of its hands by the court and managed by an officer of the court. This step is taken at the instance of creditors, in order to have the property controlled, protected and managed for the benefit of existing creditors, whose rank and priority, as then existing under the law, remain and must remain unchanged. No court has the right or power to displace existing liens, to divest vested rights, or to derange that order in which creditors, by their own contracts, have classed themselves under the law. It would be alarming to creditors, if not a monstrous doctrine, if a court, having forcibly taken possession of the property of a railroad, should have the power to upset the status of things and unhinge the vested rights of creditors by a rule of discretion resting on caprice.

Equity follows the law, and will not and cannot violate its mandates and behests. The harshness of the rules of law it will moderate, but then only to *protect* rights and *prevent* wrongs, which the rigid rules of law fail to do. Estates of decedents, and property of all kinds, coming into the control of a Court of Equity, will be administered by fixed and established principles, and not by caprice or fancy.

The property of the Greenville and Columbia Railroad Company is now being administered by this court. It has been brought here by creditors who ask this court to administer it, not for the benefit of the company, out of whose hands it has been taken, but for the benefit of the creditors. This the court has undertaken to do, and must do, and must, in so doing,

have a sacred regard for the rights of creditors as fixed at the date of the forcible sequestration of the property by the court. But a material part of this administration consists in the management of the road as a highway for traffic and travel, and whatever is essential to this proper management, the creditors have asked the court to carry out. This also the court will do, and to all the necessary incidents of good management, the creditors have, by coming here, agreed and contracted to submit, and are bound to acquiesce therein, even though their liens and rights may be affected thereby.

The necessary expenses incurred in the management and preservation of the property, it is evident must be defrayed by the court. This must be done out of the earnings, and earnings alone, if sufficient; and if not sufficient, then out of the property, and this before any creditor can receive a cent of his debt. Wages of employees of every class, and all kinds of material and labor furnished in order to keep up the road, constitute the leading items of necessary expense. To produce income for the creditors these expenses are absolutely necessary, and upon every principle of equity, as well as from the implied agreement of creditors, who have forced the road into court; these expenses must be paid in preference of all outstanding debts. Beyond this the court will not go, nor allow its officers to go, in incurring new liabilities.

This is the doctrine of fairness, equity and good faith, and is established by the uniform current of the decisions of our courts and the doctrines of our text writers. *High on Rec.*, §§ 390–398; *Jones on Rail. Sec.*, *ch. XIX.*, §§ 557–566, and authorities there cited. Numerous decisions of the Circuit and Supreme Courts of the United States and the states might be referred to, all concurring in this leading doctrine as to the powers and duties of courts in running and managing insolvent railroads. The duty of the court is not to teach railroad officials how a railroad can and ought to be managed, but itself so to manage it as best to subserve the interest, real not imaginary, of existing creditors, whose servant and agent the court has undertaken to be. Economical management and prompt sale, if sale must be had, should, therefore, be the sole end and aim of the

court. Whatever, therefore, pertains to and is necessarily incident to the good management and preservation of the property, the court should do, and the creditors must submit to; but beyond this the court must not be led by caprice, taste, fancy or supposed kindness and mercy.

Therefore the petitioners, to succeed in their prayer for precedence, must show that the payment of their claims out of the income falls within this rule, and that such payment is necessary to the management of the road, and is to the interest of the mortgage bondholders.

The petitioners contend that their causes of action arose and their judgments were recovered while the road was in the hands of a receiver, and hence their equity to be paid out of the income. They say that the road was sequestered by the court in 1872, by the order of Judge Melton, and that the officers of the company were, by that order, made receivers; that the appointment of James Conner, in 1878, as receiver, did not change the status of the road, but only made definite and complete the status which before was anomalous. The counsel for the bondholders, resisting these petitioners, contend that no receiver, properly so called, existed until the appointment of James Conner.

I deem the settlement of this dispute not necessary to their judgments, and will consider the question as if the position of the petitioners in regard to it is correct, and I hold that the claims of the petitioners, admitting that they arose subsequent to the receivership, are no more entitled to priority over the liens of mortgage bondholders, as far as the earnings are concerned, than if they arose prior to the insolvency of the road and the appointment of a receiver.

*Jones on Rail Sec.*, § 571, lays down the following doctrine : * * *

In the further discussion of this point the author cites the case of *Davenport* v. *Alabama and Chattanooga R. R. Co.*, 2 *Woods* 519, which was for damages to a passenger on that road while in the hands of a receiver.

In none of the authorities cited by counsel for the petitioners do we find anything to sustain their claim. All are in harmony with the above case, and the doctrine of the text of Mr. Jones.

The case of *Fosdick* v. *Schall*, 9 *Otto* 235, which is most relied upon by claimants' counsel, is not at all at variance with the above, and the law as laid down in Davenport v. Alabama and Chattanooga Railroad Company is sound doctrine and well established.

It follows that the payment of income heretofore, if any has been paid, to interest on the mortgage debt, was not a diversion of funds, which of *right*, or in equity, belonged to the petitioners, nor have they any equity to any part of the present income or future earnings, prior to the right of the mortgagees, to whom it belongs primarily after payment of expenses.

It is, therefore, adjudged that the judgment of the petitioners do rank with the other judgments according to date and lien in the distribution of the assets of the Greenville and Columbia Railroad Company, in the possession of the court, and that, as such, they are not entitled to be paid out of the income or property in preference of superior liens.

The exceptions to the master's report are .overruled, and the same is confirmed.

The petitioners appeal to this court upon the following exceptions to this decree:

1. Because his Honor erred in ruling that the payment of income heretofore, if any has been paid, to interest on the mortgage debt, was not a diversion of funds which of right, or in equity, belonged to the petitioners.

2. Because his Honor erred in ruling that the petitioners have not any equity to any part of the present income or future earnings, prior to the right of mortgagees.

3. Because his Honor erred in adjudging that the judgments of the petitioners do rank with the other judgments according to date and lien in the distribution of the assets of the Greenville and Columbia Railroad Company, and that they are not entitled to be paid out of the income or property in preference of superior liens.

*Mr. W. C. Benet* for Brown and wife; Cummings and Redwood, appellants.

The orders of court prevented us from enforcing our executions against the property of the company. 2 *Redf. on Railw.* 510; 6 *Rep.* 331; *High on Rec.*, § 163; 5 *Wait Act. & Def.* 354; 16 *Wall.* 218. Though we might have petitioned the court for payment. *High on Rec.*, § 2. Under the order of Judge Melton, of July 2d, 1872, the president and directors of the company became receivers of the court. 4 *Gratt.* 187; *High on Rec.*, § 5.

Our suits were brought against the corporation, but the directory, who were also the receivers, were served, and appeared and litigated, without objection. Objection has, therefore, been waived. 85 *Ill.* 558; 17 *Alb. L. J.* 209; *High on Rec.*, § 396; 23 *Ind.* 553; 29 *Vt.* 421; 2 *E. D. Smith,* 519; *Wait Ann. Code*, § 134, *f;* 17 *Wall.* 451. There has been here a continuing receivership since 1872, and our claims extend to the fund in court, and not to the earnings, only, which were in existence at the time the liabilities arose. 9 *Otto* 235; 6 *South. Law Rev.* 548, 549; 107 *Mass.* 1; 18 *Amer. Railw. Rep.* 565.

The whole doctrine of receivers of railways is comparatively new, and is progressive and expansive. 6 *South. Law Rev.* 536; 16 *Wall.* 203; 18 *Amer. Railw. Rep.* 291; *High on Rec.*, §§ 365, 390–392; 1 *Wood* 336; 9 *Otto* 389. Wages of laborers and other employees, materials, supplies and repairs are payable out of the receiver's fund. Cases *supra,* and 3 *Cent. Law J.* 578. Also, attorneys' fees. 8 *Rep.* 579; 58 *N. Y.* 368; 3 *Otto* 352. Also, damages for goods lost. *Jones on Rail. Secur.,* §§ 498, 512. Also, for injuries to employees. 20 *Ohio St.* 137. Also, for injuries received by others besides employees or passengers. 18 *Wis.* 74. Also, for injuries sustained by passengers. 4 *Hun* 373; 26 *N. J. Eq.* 474; 17 *Wall.* 445; 20 *Ohio St.* 150; *High on Rec.,* §§ 392, 395; *Wood on Mast. & Serv.,* § 412. The effect of the appointment of a receiver is to take the property into the custody of the court, whose hand the receiver is; but his duties require him to operate the road, which is a common carrier. 5 *Wait Act. & Def.* 353, 354; *High on Rec.,* § 1, *et seq.;* 2 *Story Eq. Jur.,* §§ 829–833; 4 *Gratt.* 208; 4 *Md.* 85; 80 *Ill.* 467. The fund in the receiver's hands must be applied under the direction of the court. Neither the suing creditors

nor mortgagees have any superior right to them.   11 *Paige* 436;
10 *Paige* 43; 1 *Jones on Mort.*, § 160; 18 *Amer. Railw. Rep.*
234–237.   The doctrine is given definite shape in *Fosdick* v.
*Schall*, 9 *Otto* 235.   See Bispham's comments in 6 *South. Law
Rev.* 543.   Having taken possession of the road, the court should
do exact justice; should enforce the legal remedies of parties
enjoined.   5 *Wait Act. & Def.* 353; 2 *Story Eq. Jur.*, § 798;
4 *Rich. Eq.* 201; and should do what the corporation could
be compelled to do.   Authorities, *supra*.   The liabilities of
a receiver are identical with the liabilities of the corpora-
tion.   Authorities, *supra;* 38 *Vt.* 402; 6 *Bosw.* 627; *High
on Rec.*, §§ 395–398; 5 *Wait Act. & Def.* 379–385; 2 *Van S.
Eq. Pl.* 427.   Receiver, is therefore, liable for damages, in-
juries, expenses, claims, &c., if the corporation in charge of the
road would be.   So is he liable for injuries to passengers and
employees, because this liability attaches to his duties.   1 *Smith
Lead. Cas.* 101.   Unless paid, business of road and value of its
property is impaired.   1 *Van S. Eq. Pl.* 380; and because such
damages are part of the expenses.   Necessary expense is that
which insures income.   Employees are necessary to running the
road, and passenger traffic produces income.   *Davenport* v. *Rail-
road Company*, 2 *Wood* 519, stands alone, and is opposed by all
the authorities, *supra*.   Mr. Jones (*Railw. Sec.*, § 571,) cites this
case with approval, but finds no other authority for the doctrine
quoted in the Circuit decree; but see Sections 498, 512.

*Mr. J. E. Bacon*, for Layne, appellant.

*Messrs. Simonton and Barker* for the receiver.

Judge Melton's order did not make the officers of the road re-
ceivers.   *High on Rec.* § 1; 17 *How.* 331.   Judge Pressley's
order cannot make them receivers.   If they were receivers, they
should have been sued *eo nomine*.   *High on Rec.*, § 258.   But
petitioners cannot be paid out of the funds in the hands of the
receiver, for after appointment of receiver, the income belongs to
the mortgagees.   94 *U. S.* 800; 9 *Otto* 245, 389.   Earnings
were not appropriated by the receiver to the bonded debt.   There
is no superior equity with these petitioners; the precise point has

been adjudicated. 2 *Wood* 519; *Jones on Rail. Sec.* § 571. The dictum of Chief Justice Waite in Fosdick *v.* Schall was a surprise to the profession.

*Mr. S. W. Melton,* same side.

September 10th, 1881. The opinion of the court was delivered by

FRASER, A. A. J. The action in the above case in which James S. Gibbes and others are plaintiffs, was commenced May 6th, 1872. On May 25th, 1872, an order was made by his Honor, Judge Melton, " that until further order of this court the said Greenville and Columbia Railroad [Company] be *enjoined and restrained* from paying out or in anywise transferring and delivering to any person any of the moneys, property or effects of the said company, except so far as the same may be necessary to the keeping up and to the operating of the road of said company."

On June 11th, 1872, the action in the name of the attorney-general was commenced. A motion was made for a *receiver and other relief* and Judge Melton, by consent of counsel for the company and certain creditors, on July 2d, 1872, ordered " that any and all judgment creditors of the said company *be restrained and enjoined* from enforcing their said judgments against the property of the said company." The same order contained this further provision : " As the state cannot be required to give security as other plaintiffs, it is *ordered* that the president and directors of the Greenville and Columbia Railroad Company, under the order of and subject to this court, *continue in the possession and management* of the property of all kinds of said company, and in like manner continue to *conduct* and *carry on the business of said company ;* that they make *report to this court* at such time as this court may require, of the property of all kinds of said company, of its earnings and profits and expenditures, to the end that such *orders* may; from time to time, be moved for as may be necessary and proper for the protection of the property of said company and of the interest of all parties concerned, *pending litigation.*"

Affairs continued in this situation until November 23d, 1878, when Judge Pressley made an order in which it is said : " I con-

sider that the said order of Judge Melton did make the officers of the Greenville and Columbia Railroad company *officers* of this court, and responsible to it in the *character of receivers ;* but they have not executed the proper bond nor have they filed their accounts or performed the other duties required by that order.   It is, therefore, imperative on me to put an end to that condition of the property and to place it more substantially in the hands and under the custody and order of this court.   It is, therefore, ordered that *James Conner, Esq.,* be, and he is hereby, appointed *receiver* of all and singular the property and assets, rights, credits and franchises of the corporation defendants, the Greenville and Columbia Railroad Company ; that he do forthwith *demand and receive possession thereof,*   *   *   *   and the same safely keep and preserve, *subject* to the *control, order and direction* of the court, *with power and authority to manage and operate* said railroad, to *receive* the *income and earnings* thereof, and of the same to *disburse* whatever may be necessary for the expenses of running said road, and with all the other and further power and authority as may be conferred by the decree of this court hereafter to be filed.   It is further ordered that all and singular the creditors of the said the Greenville and Columbia Railroad Company be, and they are hereby, *enjoined and restrained,*   *   *   *   from enforcing judgments against said company."

After this order was made, James Conner, as receiver, took charge of the road and all the property of the company and for some time conducted the operations of the road *very successfully,* and, after meeting all current expenses of his administration and investing a considerable sum out of the income in necessary rolling stock, &c., had on hand and has turned over to the master of this court a considerable sum arising from income.

By the order of the court the road and all its outfit and all the property of the company have been sold by the master.   The sum realized was sufficient to pay all the first mortgage bonds and the guaranteed bonds.   The second mortgage bonds constituted a third lien on the property, and after exhausting the proceeds of the sale and all the surplus of income, there would still be a large deficiency in the amount necessary to pay these bonds.

The petitioners in the cases before the court are not lien cred-

itors. They claim, however, that they have a right to be paid out of the income ; that their claims were expenses incurred during the period in which the railroad was in the hands of a receiver, or if not a receiver *eo nomine*, in the hands of persons *appointed by, responsible to, and acting under the orders of the court* which had enjoined the enforcement of judgments against the property of the company.

The petitioners have unnecessarily complicated their cases by suing them to judgment in the Court of Common Pleas, in which they are severally parties plaintiffs and *"The Greenville and Columbia Railroad Company"* defendants.

The first three cases were claims for injuries done to *passengers*, June 1st, 1874. The amount of the judgments are for Brown and wife, $8137.15 ; Redwood, $2636.85 ; and Cummings, $2650.90. The last case was for injury resulting in the death of John T. Layne, *an engineer in the employ* of the company, or rather of those who, under the order of the court, had charge of the road and directed its operations. The injury resulted from a *defective* boiler. In this case there was a judgment by consent of the counsel of the administratrix and the counsel of the managers of the road. "The president and directors" had the company represented by counsel in these cases and, so far as appears, raised no objection to the appearance on the part of the company. It is not clear that there could have been any valid objection raised to a suit against the *company*, as only the enforcement of judgments was enjoined.

These claims are all pressed in this case not on account of their rank as judgments, but on account of *the cause* of action on which those judgments are based. It would have been more regular to have based the claim in this court at once on these several causes of action. This, however, would have opened the cases anew and led to a very long and expensive investigation. It is as well, therefore, and perhaps the duty of this court to disregard the *mere form* and treat the judgments as they seem to have been regarded by all parties as sufficient *evidence* of the *nature* of the *claims* and the *amounts* due on them severally. These claims were referred to the master, were reported on unfavorably and the report confirmed by the Circuit judge, and this

2 L

appeal is from his ruling. Claims for *cotton lost* and also *counsel fees* for professional services rendered *after* the commencement of the proceedings by the creditors against the Greenville and Columbia Railroad Company, have been paid out of the income made by the receiver, James Conner, but it does not follow that *these claims*, which are *contested* by the lien creditors, should also be paid out of the fund ; they must stand on their own merits.

These claims arose during the management of the road by " the president and directors," under the order of the court and before the appointment of " Receiver Conner." The president and directors did not turn over to Receiver Conner any surplus of *income* and it was claimed by the petitioners and conceded for the purposes of these cases that a considerable amount of the income during the administration of the president and directors was paid out as interest on the bonds held by the lien creditors. The fact was not settled by the presiding judge, but it seems not to have been seriously questioned in the argument, and in the view taken by this court of these cases it is not material what the fact is. The question of a *diversion* of the income to interest becomes important when claims which ought to be paid out have not been paid and such income has been diverted to the payment of interest, and the question is whether such income so diverted should not be restored out of the sale of the property. In this case there is no such question. There is a considerable sum turned over by the receiver to the master and now under the control of this court.

If the order of the court of July 2d, 1872, created a receivership in fact, then the mere transfer of that office to Receiver Conner certainly cannot have the effect of invalidating claims which were good under the first administration. The management of the court is *one* even if it becomes necessary to change the receiver once, twice or oftener. Claims against receivers would stand on a very unstable basis if they could be defeated by a change which could so easily be made. The questions, therefore, are these :

1. Was the order directing " the president and directors of the Greenville and Columbia Railroad Company " to continue in the possession and management of the property of all kinds of the

company " and " to conduct and carry on its business under the *order* of and *subject* to this court," and " to make report," that orders * * " may from time to time be moved " for " pending litigation," the appointment of a receiver ? If not in name was it so in substance ?

2. What are the relations of such a receivership to third parties with whom it may have transactions in reference to the property and business of the corporation shippers, passengers, employees, &c. ?

It is true, that this order of July 2d, 1872, was somewhat anomalous. It was *without bond* that the president and directors of the Greenville and Columbia Railroad Company were intrusted with valuable property, but they were not the *owners* of the property, and it was competent for the Circuit judge to dispense with the security, and if, in *his judgment,* they were proper persons for the appointment, it was in his discretion to make it. It is true that it was no *individual by name* that was appointed, but it was an organized board whose identity was provided for and secured by the rules laid down for preserving the vitality of the corporation whose exponent it was. It is, perhaps, a peculiar appointment, but it was competent for the court to make it. See *High on Rec.* 66, 67, 68, 81, as to persons to be appointed.

All the essential powers of a receiver were conferred by this order. It is the business of the receiver " to receive and preserve the property" *pendente lite*—" the court itself having the care of the property by its receiver." The receiver has no powers other than those conferred on him by the order of his appointment, or such as may be derived from the established practice of Courts of Equity. *High on Rec.* 1.

These officers, " the president and directors," were ordered to continue in the possession and management of the property " and " conduct and carry on the business of the *company*," and " make reports," that further " *orders* " may be made. In the order of Judge Pressley, of November 23d, 1878, James Conner was appointed receiver *eo nomine* and he was required " to demand and receive possession of all the property of the company, to keep and preserve the same, subject to the control, order and

direction of the court, with power and authority to *manage* and *operate* the said railroad, to *receive and disburse* the *income*, the disbursements to be confined to the expense of running the road." In the first case the sweeping power is given " to *conduct and carry on the business of the company*, and in the latter the power is somewhat limited in the matter of expenditures of income. Every essential feature of a receivership was created by the order of July 2d, 1872, and the office ought to have been so called, and to be treated so now after the property has been, at the instance of the creditors, held for eight years in the same way as if it had been in name as it was in substance, a receivership. *Fifty-four Bonds case, ante* 304.

Having come to the conclusion that the property of the Greenville and Columbia Railroad Company has been in the hands of receivers since the order of July 2d, 1872, and the road operated by the receivers, it remains to determine what are the liabilities of the receivers.

The railroad company was a common carrier, and, as if in anticipation of events which have come to pass, the charter of the company, (*A. A. Stat.* 1845, *p.* 328, § 13,) provided for the right to let or farm out to others, the right of transportation of person, produce, &c., and that the company, in the exercise of this right, and the persons to whom this right of conveyance and transportation should be let, shall, in so far as they act on the same, be regarded as " *common carriers.*" It would be an easy way to defeat the wise purposes of the legislature if, on the application of a mortgage creditor, the railroad and all the important and valuable franchises of the company could be put, by an order in chancery, in the hands of a receiver, who could, for years, as in the case before the court, conduct the operations of the railroad, and *enjoy the franchises* of the company, entrusted to it on considerations of an enlightened public policy and *escape* the *responsibilities* of the common carrier. The convenience of transportation of persons and property, secured by this responsibility constituted in large measure the inducement to the legislature to exercise the right of *eminent domain*, and transfer to railroad companies valuable franchises, and in some cases against their will, the property of private citizens. The current of opinion

seems to be very decidedly in favor of the view that receivers are common carriers. It is said in *High on Rec.*, § 398: " Receivers in possession of, and operating a railroad under appointment of a Court of Equity, may be held liable as common carriers for negligence in the performance of their duties." In *Jones on Rail. Sec.*, § 511, we find these words: " But considerations of public policy may likely lead to the adoption of the rule that a receiver shall not be allowed to exercise the rights and powers of a common carrier without being also held subject to a common carrier's duties and liabilities." And this we hold to be the better doctrine.

The case of *Davenport* v. *Railroad Company*, 2 *Wood* 519, was one for the recovery of damages for a personal injury, and in it Judge Wood says: "It was regarded as too clear for argument that if the road had been run by the president and directors when the injury was sustained, such a claim could not possibly have priority; but the receivers *act merely in place* of the president and directors, except so far only as the court may otherwise direct." In one sense the receiver does so act, but in another sense, especially in that sense which is important in these issues, he *does not so act*. The receivership is the transfer of the property to a new owner, who begins his work cut off from the past, with new duties and new obligations. The court could order a sale at once and let new and absolute owners take the property and assume their proper liabilities to third parties. If, instead of doing this, a receiver is appointed, he represents, technically, the interests of an insolvent corporation, but technically and substantially the interests of creditors, who ought not to be allowed to enjoy the franchises and property of the corporation without its responsibilities.

The intimation is given by Chief Justice Waite, in *Fosdick* v. *Schall*, 9 *Otto* 254, that cases may arise in which it would be proper to apply a part of the proceeds of the *sale* of the mortgaged property to the payment of expenses incurred during the receivership. While the opinion in that case throws a flood of light on the subject of the payment of the expenses of a receivership and the mode of these payments, as well as the general relations of all creditors to the income, there is nothing in the

case specially applicable here, as in the view taken by this court, there is a fund arising from the *income during the time the property has been under the control of the court, in the hands of its appointees,* out of which can be paid the claims of petitioners.

Under the order of July 2d, 1872, the president and directors were instructed " to conduct and carry on the business of the company." This is language certainly broad enough to authorize the payment for losses and damages usually paid for by a railroad company, if any order on the subject was necessary. If there has been a receivership of this railroad since July, 2d 1872, and receivers are common carriers, there can be no doubt of the liability of the receiver in all these cases.

In *Kinney* v. *Crocker,* 18 *Wis.* 74, it was held that a state court could entertain jurisdiction of an action against a receiver appointed by the United States court for injury to the plaintiff in that case, from negligence of the employees. In *Meara's Adm'rs* v. *Holbrook,* 20 *Ohio St.* 137, it was held that a receiver was liable for injury to an employee. These doctrines are, of themselves, in accord with the best reason and public policy, and sufficiently sustained by authority in cases where the whole field is new and comparatively unexplored.

If the receiver is liable, and there is nothing to show and no intimation that there was any personal fault so as to make him personally liable, the claims ought to be paid out of the fund in court. No question of jurisdiction between two courts has arisen here as in most of the cases on this subject.

It is, therefore, adjudged and decreed that the decree of the Circuit judge be reversed, and that the case be remanded to the Circuit Court, that proper orders may be made for the payment of the claims of these petitioners, in accordance with the views herein expressed.

McIVER. A. J., and ALDRICH, A. A. J., concurred.