FRANK PATRICK, *Receiver of the Kansas Rolling Mill Company*, v. DAN. P. EELLS AND WALLACE PRATT, *Trustees*.

RECEIVER, *Not Made a Party Defendant*. Where a suit is commenced against an insolvent corporation to foreclose a mortgage executed by the corporation, embracing a large amount of its property, and thereafter, in an action brought by a creditor against the corporation, a receiver of the real and personal property of the corporation is appointed, with the qualification that he was not to interfere with the possession of the mortgaged property of the corporation, or with the corporate records of the company, and such receiver makes application to the court appointing him to be permitted to be made a party defendant in the foreclosure suit, and for leave to file an answer to the effect that the mortgages and bonds described therein were made without consideration and for the purpose of defrauding the creditors of the company, *held*, as the re-

ceiver is the officer of the court, he had no absolute right to have his application granted. His motion was addressed to the discretion of the court, and being denied, the supreme court will not interfere, under the circumstances of this case.

### Error from Wyandotte District Court.

THE Kansas rolling mill company was incorporated under the laws of Kansas in 1875, and owned and operated a rolling mill at Rosedale, in Wyandotte county, in this state. On May 15, 1879, the company issued one hundred bonds of one thousand dollars each, payable twenty years after date, with interest at the rate of seven per cent. per annum, payable semi-annually, according to the coupons with the bonds, and also secured payment thereof by deed of trust, in the nature of a mortgage of the same date, conveying to *Dan. P. Eells* and *Wallace Pratt,* as trustees, about forty acres of land at Rosedale, in Wyandotte county, with the rolling mill thereon, and all the machinery, tools, implements, fixtures, property and materials used in the operation of the rolling mill, and all the franchises and rights of the corporation, together with the property and rights acquired by virtue and under authority thereof. The deed, *inter alia,* provided that in case of default on the part of the corporation in paying any installment of interest for thirty days after the maturity thereof, or in case of failure to pay the taxes on the mortgaged property at the time the same should be paid according to the law, then the principal of all said bonds should become due and payable, and it should be lawful for the trustees, Eells and Pratt, to take possession of the mortgaged property, and take care of and use the same, making the necessary alterations and additions, and apply the net proceeds to the payment of the bonds and coupons. This mortgage deed was recorded in the office of the register of deeds of Wyandotte county, on June 21, 1879. The corporation failed to pay, and never did pay, the $3,500 of interest coupons that matured Nov. 15, 1882, nor any part of the taxes for 1882. On Feb. 2, 1883, Eells and Pratt, as such trustees, with the consent of the corporation took possession of the

mortgaged property. After taking possession thereof, on February 14, 1883, the trustees brought suit in the district court of Wyandotte county to foreclose said deed, claiming that $100,000 of the principal was due. In the petition, it was also alleged that on December 15, 1882, the rolling mill company made another deed of trust of the same property to the same trustees to secure 275 bonds of $1,000 each, payable twenty years after date, with interest at seven per cent., payable semi-annually, of which bonds 175 had been issued and sold to various parties; that said mortgage deed securing these bonds was filed for record on the 12th day of January, 1883. The petition further alleged that on January 24, 1883, the rolling mill company gave to the same trustees a chattel mortgage of the personal property of the company to secure the bonds issued on December 15, 1882. This chattel mortgage was filed on the 25th day of January, 1883. The petition prayed that an account might be taken of the amount due for principal and interest upon $100,000 of the bonds first described, and for taxes paid by the plaintiffs upon the mortgaged property; that an account might also be taken of the property covered by the mortgage of May 15, 1879; that the plaintiffs have judgment in their favor and against the defendant for the amount so found due for principal and interest upon said bonds, and for taxes paid, and costs; that said mortgaged property be sold to satisfy the same; and for such other and further relief as might be agreeable to equity.

Summons was served on the company on February 14, 1883. The company never answered, or made any appearance. On February 20, 1883, the Atchison, Topeka & Santa Fé railroad company filed in said district court a petition against the rolling mill company, alleging a balance due on account for materials furnished prior to December 4, 1882, amounting to over $7,000. On March 21, 1883, the railroad company, without notice to the rolling mill company, obtained from the district judge, at chambers, an order appointing Frank Patrick receiver of the rolling mill company. The order pro-

vided that Patrick, on giving bond in the sum of $500,000, should be possessed with all his power and rights as receiver; that the rolling mill company should assign, transfer and deliver over to the receiver, on oath, under the direction of the railroad company, all the property and assets of the rolling mill company of every nature and description; and that the receiver continue the business of the management of the corporation, and collect what was owing to it; and that the receiver and each of the parties have leave to apply to the court for further orders as might be necessary. On March 22, 1883, the rolling mill company made a motion to vacate the order appointing the receiver. The motion was heard before the judge, in vacation, on March 27, 1883, and the hearing resulted in a modification of the order appointing the receiver, to the extent that the receiver should not interfere with the possession of said trustees of all or any of the property described in the mortgages, nor with the corporate records of the rolling mill company. By the modified order, the receiver was also authorized to take possession of the notes and accounts due to the rolling mill company and any property not covered by the mortgages, upon executing a bond in the sum of $250,000. On April 2, 1883, at which time the rolling mill company was in default of answer in the suit of Eells and Pratt, as trustees, instituted on February 14, 1883, the receiver, Frank Patrick, filed a motion in said suit to be made a party defendant in the case, and for leave to file an answer, alleging that he, as receiver, claimed an interest in the controversy adverse to the plaintiffs, and that he was a necessary party to the complete determination of the questions involved therein. At the same time he tendered an answer, alleging that the mortgages and bonds described in the petition were made without consideration, for the purpose of defrauding the creditors of the rolling mill company; that they were under the control of the stockholders of the rolling mill company, and were distributed to such stockholders for the purpose of defrauding the creditors of the company; and that at the time of issuing the bonds, the rolling mill company was

and still is insolvent; that all this was done to defraud such as were and might afterward become creditors of the rolling mill company, and further alleging conspiracy between the stockholders, directors and trustees to defraud the creditors of said company. The answer demanded that the stockholders should be required to surrender the bonds by them held in control; that the bonds should be canceled and held for naught; that the mortgages should be decreed null and void as against the creditors of the rolling mill company, and that the property of the rolling mill company should be turned over to the receiver. The answer was not verified, and no affidavit was presented supporting its allegations. This motion was heard by the district court on April 28, 1883, and overruled. On the hearing of the application to file the answer, there was used in evidence the papers in the action of the railroad company against the rolling mill company, the petition in the suit of the trustees against the rolling mill company, and certain affidavits. The affidavit of Pratt, one of the trustees, was: that since February 2, 1883, he and Eells, as trustees, had had actual possession of all the property covered by the deeds of trust or mortgages, and of all property of the rolling mill company, except debts owing to it; that the rolling mill company made the three deeds of trust mentioned; that $275,000 of the bonds secured thereby had been issued; that the trustees accepted the mortgages, and the same were duly recorded soon after execution thereof, giving time of record, etc., thereof; that contemporaneously with, or soon after the execution of the deed of May 15, 1879, the rolling mill company sold the bonds secured thereby for value, and the same were outstanding and unpaid, and there was due thereon the amount claimed in the foreclosure petition. This affidavit also set out various provisions of the deed of trust, and among others, one in the $100,000 deed for keeping up $25,000 insurance for the benefit of the bondholders. It further stated that about February 1, 1883, the holders of nearly all the bonds secured by the deed of 1879 requested the trustees to take possession of the mortgaged property, according to the terms of the deed,

and for the purposes specified therein, and that they did so with the consent of the rolling mill company, which turned the same over to them. It described in detail the condition of the property, and what the trustees had done in operating the works and to preserve the property; that they had made some profit by running the works, and that it was necessary to keep the property together, and dispose of the same together, to realize the most and protect the interests of lienholders and others interested. It stated that the trustees were mortgagees in possession, with the consent and under the express act of the mortgagor, acting in good faith, and to carry out the trusts of the deeds of trust or mortgages; that the foreclosure suit had been promptly brought to obtain the proper judgment, and to dispose of the property to pay the mortgage debts, and that the same were just and valid.

The affidavit of Ira Harris was to the effect that the bonds and mortgages were executed in good faith, and for value; that the $275,000 of bonds issued and secured by the mortgage were outstanding and unpaid, and that the money which they represented was paid to and used by the rolling mill company in and about its business; that the bonds were sold for full value; and that some of them were held by stockholders, and others by persons who were not stockholders; that there was no apparent or real danger of the property under the control of the trustees being wasted, lost, or destroyed.

The receiver excepted to the ruling and order of the district court, and brings the case here.

*Geo. R. Peck,* and *A. A. Hurd,* for plaintiff, in error.

*Pratt, Brumback & Ferrey,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an application on the part of the plaintiff in error, as receiver of the Kansas rolling mill company, to be made a party defendant in an action pending in the district court of Wyandotte county, entitled Dan. P.

Eells and Wallace Pratt, as trustees, against the Kansas rolling mill company, to foreclose a mortgage upon a large amount of property belonging to the company, and for leave to file an answer alleging that the mortgages and bonds described in the petition were made without consideration, and for the purpose of defrauding the creditors of the company. The application was presented to the district court upon the records in the cases of Eells and Pratt, as trustees, against the Kansas rolling mill company; the Atchison, Topeka & Santa Fé railroad company against the rolling mill company; and certain affidavits filed by the trustees, alleging that on February 2, 1883, the trustees took possession of all the mortgaged property of the rolling mill company, with the consent of the corporation, under and for the purposes specified in the mortgage deed; that they were carefully, economically and successfully managing the affairs of the company; that there was no apparent or real danger of its property under their control being wasted, lost, or destroyed; that the mortgages and bonds referred to in the petition were executed in good faith; that the money which was derived therefrom was paid to and used by the rolling mill company in and about its business; that every holder of the bonds paid full value therefor; and that some of the bonds were held by stockholders, and others held by persons not stockholders. The application was denied by the court, and the motion for leave to file an answer overruled.

It is contended on the part of the receiver, that he had such an interest in the mortgaged property that he was not only entitled to be made a party, but that he was a necessary party to the foreclosure suit, and that his application ought to have been granted as a matter of right. Sections 36 and 41 of the civil code are referred to. Not so. The ordinary rules applicable to granting leave to parties to file answers do not prevail in cases of receivers. A receiver of an insolvent corporation is the representative both of the creditors of the corporation and of its shareholders. He is uniformly regarded as an officer of the court, exercising his functions in

the interest of neither plaintiff nor defendant, but for the common benefit of all parties in interest.

"Being an officer of the court, the fund or property intrusted to his care is regarded as being *in custodia legis* for the benefit of whoever may eventually establish title thereto, the court itself having the care of the property by its receiver, who is merely its creature or officer, having no powers other than those conferred upon him by the order of his appointment, or such as are derived from the established practice of courts of equity." (High on Receivers, § 1.)

Section 257 of the code also provides:

"The receiver has, under the control of the court, power to bring and defend actions in his own name as receiver, . . . and generally to do such acts respecting the property as the court may authorize."

The court never granted leave to the receiver to intervene in the action of the trustees against the corporation, and neither the code nor the practice of courts of equity authorized him to file an answer in that case without first applying to the court and obtaining its consent. Therefore the point made that the court below should have permitted the receiver to come into the case and defend, is of no avail. That was a matter in the discretion of the court; the receiver is its officer. Perhaps the district court was convinced that the trustees were acting in good faith in carrying out the trust of the mortgage deed; that the foreclosure suit had been properly brought, and that the mortgage debts were just and valid. Perhaps the court thought that a defense in the action would involve the estate in unnecessary and useless expense, and therefore deemed it just that the receiver should not proceed with its sanction.

Again, it may be that the court saw a way to protect his interests and those of the creditors without permitting him to file the answer pending. In any event, the application of the receiver to be allowed to come in and file his answer cannot be claimed as an absolute right. The motion was addressed to the discretion of the court; therefore, under the

circumstances of this case, we cannot interfere. (*Savings Bank v. Simpson*, 22 Kas. 414; Kerr on Receivers, 215; *Swavey v. Dickon*, 5 Sim. 629; 6 Ves. 287; Dan. Ch. Pr. 439; *Dunlop v. Ins. Co.*, 74 N. Y. 145; *Dunlop v. Ins. Co.*, 12 Hun, 627.)

Under the established practice of courts of equity, as a general rule, the receiver must do no act which may involve the estate in expense, without the sanction of the court; and the right of a receiver to bring actions against persons not parties to the estate for which he is appointed, for the recovery of real or personal property, or for the collection of debts, is subject to the restriction that the sanction of the court must be previously obtained. Under the rules of chancery, even the receiver cannot defend an action which was brought against him, without the sanction of the judge. (*Swavey v. Dickon*, supra; 6 Ves. 287; Kerr on Receivers, *supra;* Dan. Ch. Pr., *supra.*)

The ruling and order of the district court will be sustained.

VALENTINE, J., concurring.

BREWER, J.: I think the district court should have permitted the receiver to appear and answer, and yet I am not prepared to say that such an abuse of discretion is disclosed as justifies a reversal of its order.