DANIEL MULCAHEY, JR., *et al.*

*v.*

FANNIE STRAUSS.

*Filed at Springfield, June 13, 1894.*

1. RECEIVER—*takes subject to existing liens.* A receiver's possession of property is subject to all valid liens existing thereon at the time of his apppointment, and does not divest a lien previously acquired in good faith.

2. SAME—*protected by the court against suits.* A receiver is an officer of the court by which he is appointed, and his possession is regarded as the exclusive possession of the court. Hence, he will be protected by the court in the discharge of his duties, and no interference with his possession, without leave, will be allowed. The institution of legal proceedings against a receiver in his official capacity, without leave, is a contempt of court.

3. SAME—*jurisdiction of suits brought against, without leave.* While it is a contempt of court to bring suit against a receiver without leave of court, and while the appointing court may protect its officer by attachment for contempt or by injunction staying the suit, the failure to obtain such leave is no bar to the jurisdiction of the court in which the suit is brought, especially in cases where there is no attempt to interfere with the receiver's possession. The ordinary jurisdiction of other courts is in no manner taken away or affected by the appointment of a receiver.

4. The protection which a court of equity gives to the possession of its receiver, will only be accorded upon the application of the receiver, and the objection that leave of court was not first obtained before bringing suit against the receiver, will be waived by appearance, after which a motion to dismiss will not be entertained.

5. Where a chancery suit in which a receiver was appointed is settled, and the receiver is discharged before a decree of foreclosure, the question whether a sale made would be void, if made while the receiver was in possession, will not arise, and the failure to obtain leave to make the receiver a party defendant can not avail as an objection to the entry of a decree of foreclosure.

6. MORTGAGE—*Right to declare whole debt due for failure to pay part of debt due.* Where a mortgage provides that for any default of payment of any part of the mortgage debt the holder may declare the whole debt due, the appointment of a receiver in another suit to take charge of the property will not prevent the holder from declaring the whole amount of the mortgage due. The mortgagor's liability to pay his debt will not be suspended by such appointment.

7. SAME—*of cross-bill to foreclose.* Where a receiver is appointed in a chancery suit, the holder of a mortgage given by a defendant in that suit will not be required to file a cross-bill to foreclose his mortgage in the suit in which the receiver was appointed, but he may assert his rights by an original bill.

8. FORECLOSURE—*decree for deficiency.* A decree of foreclosure of a mortgage, requiring the mortgage debtor to pay the deficiency of the debt, after a sale of the premises, is not erroneous, although he may be released from the debt by a decree in another case, which the parties afterwards abrogate on a settlement of their differences.

9. CHANCERY—*waiver of objection to improper filing of a bill.* Where a defendant answers a bill and contests the equities it sets up upon their merits, and goes to a hearing on pleadings and proofs without objecting in some proper mode that the bill was improperly filed, he will be deemed to have waived such objection.

10. ATTORNEY'S FEES—*allowance in decree of foreclosure.* A decree of foreclosure, allowing an attorney's fee to be taxed as a part of the costs, is not erroneous when the mortgage expressly provides "that in case of foreclosure, the court shall tax up with the costs not to exceed $50 as an attorney's fee, to be collected as part of the debt hereby secured."

11. PRACTICE—*remittitur.* If a decree is for too large a sum, the error may be cured by a *remittitur* in the Appellate Court.

APPEAL from the Appellate Court for the Third District; —heard in that court on appeal from the Circuit Court of

McLean County, the Hon. THOMAS F. TIPTON, Judge, presiding.

This is a bill, filed in the Circuit Court of McLean county, on April 7, 1892, by Fannie Strauss, the appellee, against Daniel Mulcahey, Sr., and Julia, his wife, and their four children, Daniel Mulcahey, Jr., and Mary A. Mulcahey, adults, and Thomas F. Mulcahey and William H. Mulcahey, minors, and one William Scott Arnold, to foreclose a mortgage, dated March 1, 1890, upon 120 acres of land in said county, executed by said Daniel Mulcahey, Jr., to secure five notes for $5,720, of that date, four for $500 each, due in two, three, four and five years after date, and one for $3,720, due in six years after date, all drawing seven per cent interest. The bill charges, that the note falling due on March 1, 1892, and the interest on all the notes, had not been paid, and that, by reason of such default, the whole had become due, etc. Default was entered against Daniel Mulcahey, Sr. A guardian *ad litem* was appointed, and answered for the two minors. Arnold answered, saying, "that personally he has, nor claims, any interest in said cause, more than as an officer of this honorable court, being appointed by said court a receiver for personal property, and, having filed his bond as directed by the court, is now and at all times ready to obey the orders of this honorable court, wherefore he asks to be dismissed," etc. Daniel Mulcahey, Jr., Julia Mulcahey and Mary A. Mulcahey, filed their answer, denying that complainant was entitled to relief, that the notes were due or made for any consideration; and alleging, that another chancery suit, entitled Daniel Mulcahey, Sr., v. Daniel Mulcahey, Jr., and others, was then pending in the same court, in which all matters here sought to be adjudicated were in litigation, and between the same parties, and in which the court was and had been since February 1, 1892, in possession of the same property here in litigation. Replications were filed. References were

had to a master in chancery, testimony was taken, reports were made, and finally a decree of foreclosure and sale was entered on March 21, 1893. Upon appeal to the Appellate Court, this decree has been affirmed, and the present appeal is prosecuted from such judgment of affirmance by Daniel Mulcahey, Jr.; his co-defendants, Julia, Mary A., William, and Thomas Mulcahey, joining with him in the assignments of error.

As to the other chancery suit referred to, Daniel Mulcahey, Sr., at the September term, 1891, filed a bill in said court against Daniel Mulcahey, Jr., Julia Mulcahey and Fannie Strauss, alleging, that, in 1889, he bought said 120 acres from Fannie Strauss for $7,720; taking a written agreement of purchase from her, by the terms of which he was to pay her $1,000 in cash on March 1, 1890, and execute a mortgage and notes for the balance of the purchase money in the manner above stated, and she was to give him a warranty deed on that date; that his wife, Julia Mulcahey, and his son, Daniel Mulcahey, Jr., took $1,000 belonging to him and paid it to Mrs. Strauss, and, by representing to her that he was willing to have the deed made to his son, induced her to execute the deed to said Daniel, Jr., and to take from him the purchase money mortgage and notes above described; that the title was conveyed to his son without his knowledge or consent; that he did not know of it until a long time afterwards; that he was sixty years old, could not read or write, and, during late years, had entrusted his business transactions to his said son and wife; that his said son and wife took possession of the stock and personal property on said premises, and ordered him to leave the place, and, upon his refusal to do so, swore out a warrant against him, and procured him to be locked up in the county jail; that his said son and wife conspired to defraud him, and deprive him of his property; that they sold off the last year's crop and a part of the stock; that his said son held the title as his trustee;

and praying in said bill that said deed and mortgage be canceled; that said Strauss be required to deed the land to him; that he be allowed to execute notes and a mortgage for the unpaid purchase money; that his said son and wife be enjoined from disposing of said land or personal property, etc. Daniel Mulcahey, Jr., and his mother, Julia Mulcahey, filed an answer, denying the allegations of the bill, but there is nothing in the record to show, that Fannie Strauss was served therein or entered her appearance, or took any part in said proceeding. Said premises were the homestead of said family, and were in the possession of Mrs. Mulcahey and her children.

In the progress of the suit, said Arnold was appointed receiver of the personalty on the premises, except the household effects, and of the crops of corn and other grain thereon, and of the stock. By another order he was authorized to lease the land for one year from March 1, 1892, but it does not appear whether he did so or not. The said Julia filed a cross-bill therein, praying for a divorce from said Daniel, Sr., on the ground of extreme and repeated cruelty, and praying that he be enjoined from interfering with said premises, which bill was answered by the defendant thereto, and its charges were denied. It seems, that an effort was made to settle the difficulties between the members of this family, which resulted in the execution on August 3, 1891, of a deed by Daniel Mulcahey, Jr., and his father and mother, by which the title was vested in the four children, subject to a life estate in the father and mother, and to their occupancy of the premises during their lives as a homestead, and with an agreement that they should apply the income of the farm, after taking out family expenses, to the payment of said mortgage.

At the February term, 1892, said Daniel Mulcahey, Sr., filed a supplemental bill in said cause against his wife and children, charging that said last named deed of settlement had been obtained by fraud and misrepresentation, and ask-

ing that it be set aside, and that a receiver be appointed, which appointment was made, as above stated.

At the November term, 1892, a decree was entered in said cause, granting the relief prayed for in the original and supplemental bills, and dismissing the cross-bill. In said decree, the receiver was ordered to deliver the money and personalty in his hands to Daniel Mulcahey, Sr.; the defendants and said receiver were ordered to deliver the possession of the land to said Daniel Mulcahey, Sr., and, in default of their doing so, it was ordered, that a writ of possession be issued; Daniel Mulcahey, Jr., was ordered to execute a deed conveying the land to his father, subject to said mortgage, which the said Daniel Mulcahey, Sr., was to assume and pay, and said Daniel Mulcahey, Jr., was thereby "released from any personal obligation for the payment of said mortgage." It was also therein ordered that said deed of August 3, 1891, be set aside. An appeal was allowed from this decree, and the time to perfect it expired on January 2, 1893.

Subsequently, at the February term, 1893, a stipulation was entered into in said cause for the settlement thereof, by the terms of which the cause was re-docketed; the leave to appeal and appeal bond were withdrawn; the decree entered at the November term, 1892, was modified in the following respects: the question of divorce was re-opened and re-heard, the defendant to the cross-bill withdrew his answer thereto, the personal property was decreed to belong to Daniel Mulcahey, Jr., and the receiver, Arnold, having accounted, was discharged. A hearing was had on the cross-bill, and a decree of divorce was granted, and the custody of the children was given to Mrs. Mulcahey. On February 24, 1893, a deed was executed by Daniel Mulcahey, Sr., and his wife, conveying the premises to Daniel Mulcahey, Jr. Daniel Mulcahey, Jr., at the same time executed a declaration of trust, wherein, after reciting that he had purchased the premises and all the personal property

thereon from his father, he declared that he held the same in trust, "to pay the mortgage debt now on said premises," to pay certain expenses of said law suit, to support his mother during her life, to pay his sister a certain amount, to make sales of the premises, if necessary, to pay said incumbrance, to hold certain interests in trust for his brothers, etc.

Mr. FRANK R. HENDERSON, for the appellants:

"Persons having liens on property have no right to interfere with its possession by the receiver, and without any application or adjudication of the court sell and dispose of it, and thus dissipate it and deprive the court of jurisdiction to administer it."

In *Noe* v. *Gibson*, 7 Paige's Chy., pp. 513, 515, 516, we find: "Where property is rightfully in the hands of a receiver, it is in the custody of the court. His possession is in law the possession of the court itself.

It is well settled that after a receiver has taken rightful possession of property, it is a contempt of court for a third party to attempt to deprive him of that possession by suit or other proceedings against him, without permission of the court by whom the receiver was appointed," citing in support: *Angel* v. *Smith*, 9 Ves. Rep. 335.

"Where a receiver is in possession of property on which a third person has a claim, it is the duty of such third person to apply to the court on notice to the receiver, asking for an order on the receiver to pay, or that he be at liberty to proceed by suit."

Citing in support of its language, Smith's Off. of Rec. 77: "If the claim is contested, the claim should be referred to the master. The same principles are applicable to every other interference with the receiver, who holds the property as the officer of the court, as his possession in law is the possession of the court itself." Citing in support of this opinion: *Johnes* v. *Claughton*, Jacobs' Ch. Rep. 572; *Lees*

v. *Waring,* 1 Hogan's Rep. 216; *Crone* v. *O'Dell,* 2 id. 144; *Sweet* v. *Austin,* Conroy's Rep. 174; *Lynch* v. *Blake,* id. 201; *Kaye* v. *Cunningham,* 5 Mod. 406; *Matter of Heller,* 3 Paige's Rep. 199; *Matter of Hopper,* 5 id. 489.

Property can not be got out of a receiver's hands except by application to the court. *Bank* v. *Schermerhorn,* 10 Paige's Rep. 264.

The recital in a deed that the grantee assumes and agrees to pay an incumbrance is not sufficient to make the purchaser personally liable, but it must be *alleged* and *proved* that he assented to such provision in the deed. *Thompson* v. *Dearborn,* 107 Ill. 87, 93.

Taking deed subject to prior incumbrance, creates no personal liability on the part of the purchaser, unless there is *express agreement* on the part of the purchaser to pay the same. *Comstock* v. *Hitt,* 37 Ill. 542; *Rapp* v. *Stoner,* 104 id. 618; *Condict* v. *Flower,* 106 id. 106, 107; *Nichols* v. *Spremont,* 111 id. 632; *Chambers* v. *The People,* 113 id. 511.

If the purchaser is responsible at all, it would be to his grantor and not the holder of the notes. *Comstock* v. *Hitt* 37 Ill. 542.

Nor does the fact that the grantee expected to pay the incumbrance, and has paid a part of the interest thereon, create a personal liability. *Rapp* v. *Stoner,* 104 Ill. 624.

Nor can it be said that by Daniel Mulcahey, Jr., declaring a trust, as shown by the record, that he assumes thereby any personal liability. *Condict* v. *Flower,* 106 Ill. 106, 107.

Mr. John Stapleton, and Messrs. Williams & Capen, for the appellee:

The failure of a plaintiff to obtain leave to prosecute a suit relating to property in the hands of a receiver, is no bar to the jurisdiction of the court at law, and no defense to an otherwise legal action in the trial. *Kinney* v. *Crocker,* 18 Wis. 74; cited in *Lyman* v. C. V. R. R. Co., 59 Vt. 167.

The receiver having voluntarily submitted to the authority of the court, and joined issue without objection, it is too late for him to urge that "leave to sue was not first obtained." *Elkhart C. W. Co.* v. *Ellis*, 113 Ind. 215; High on Receivers, Par. 261; *Hubbell* v. *Dana*, 9 How. Pr. 424.

In an action against a railroad company, the company can not plead, either in bar or abatement, that it is in the hands of a receiver, and that the suit was brought without obtaining leave of the court by which such receiver was appointed. *O. & M. Ry. Co.* v. *Nickless*, 71 Ind. 207.

A receiver who is not expressly authorized to sue by the judgment or order appointing him, may be so authorized by a subsequent order. *Lathrop* v. *Knapp*, 37 Wis. 307.

If the bill, as in this case, makes the receiver a party, and he sets up the fact that he is such receiver, and the court makes no objection that the bill is improper on that account, that is in fact granting its consent in the most effectual manner.

The objection that appellee should have filed a cross-bill was not raised in the trial court, and is, therefore, waived. *Van Wert* v. *Boyes*, 140 Ill. 89.

"On this point it is sufficient to say that this question was not raised in the Circuit Court, and as a consequence it must be deemed to have been waived. The defendant, instead of objecting in some proper mode that the bill was improperly filed, answered and contested the equities which it set up on the merits, and went to a hearing on pleading and proofs without objection. * * * *"

See on this point *Senft* v. *M. Ry. Co.*, 14 N. Y. S. 876.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

*First*, the point is made, that it was a contempt of court to file the bill to foreclose the mortgage against the receiver appointed in the chancery suit, theretofore instituted to set

aside the title of the mortgagor, without first obtaining the leave of the court for that purpose.

Arnold states in his answer, that he was appointed receiver of the personal property. The order appointing him recites, that he is appointed receiver of the personal property; and he is therein directed to take charge of the personal property only. While, however, the pleadings and proofs leave it somewhat doubtful whether a receiver of the land was actually appointed or not, yet, in the consideration of the first point thus made by counsel, it may be assumed, that the receivership included the realty, as well as the personalty.

The receiver's possession is subject to all valid liens existing upon the property at the time of his appointment, and does not divest a lien previously acquired in good faith. (High on Receivers, sec. 138.) The distinction between the right to enforce a lien against real estate, which has accrued before the possession thereof by a receiver, and the right to enforce a lien accruing after the appointment of the receiver, is recognized in *Richards* v. *The People*, 81 Ill. 551. Here, the appellee's mortgage was a lien upon the property before the receiver was appointed, and before the proceeding, in which he was appointed, was commenced. Both parties to that proceeding—Daniel Mulcahey, Jr., the mortgagor, holding the legal title to the land, and Daniel Mulcahey, Sr., claiming to be the equitable owner thereof—recognized the mortgage as a prior lien, which was valid and should be paid.

A receiver is an officer of the court by which he is appointed, and his possession is regarded as the exclusive possession of the court. Consequently, he will be protected by the power of the court in the discharge of his duties, and no interference with his possession will be permitted without leave of court being first obtained for that purpose. (High on Receivers, sec. 139.) It has been held, that a court will not permit a claimant of real estate, which is in

the possession of its receiver, to bring an action of eject-
ment without first obtaining leave. (*Angel* v. *Smith*, 9
Ves. 335.) If it is desired to institute a proceeding
against a receiver for the purpose of enforcing a lien
against property in his possession, leave to do so should be
obtained from the court appointing him. (High on Re-
ceivers, sec. 139.) The institution of such a proceeding
against a receiver in his official capacity, without leave, is a
contempt of court. (*Richards* v. *The People, supra.*)

But while it is true, that it is a contempt of the appointing
court to make its receiver a party defendant to a suit with-
out leave first obtained for that purpose, it does not neces-
sarily follow that the court, in which such suit is brought,
is without jurisdiction. The appointing court may protect
its officer either by punishing the party bringing the suit
for contempt, or by enjoining him from the prosecution of
the suit. But the failure to obtain leave is no bar to the
jurisdiction of the court in which the suit is brought. This
is certainly true in all cases, where there is no attempt to
interfere with the actual possession of the property held by
the receiver. A different doctrine seems to prevail in the
Federal courts. (*Wiswall* v. *Sampson*, 14 How. 52;
*Barton* v. *Barbour*, 104 U. S. 126.) But we are disposed
to adopt the rule, laid down in quite a number of decisions
in the State courts, that the failure to obtain leave does
not affect the jurisdiction. The question is one of con-
tempt, and not of jurisdiction. "The ordinary jurisdiction
of other courts is in no manner taken away or affected by
the appointment of a receiver." (*St. Jos. & D. C. R.
Co.* v. *Smith*, 19 Kans. 225; *Chautauqua County Bank* v.
*Risley*, 19 N. Y. 369; *Kinney* v. *Crocker, Recr.*, 18 Wis.
74; *Lyman* v. *Central Vermont R. R. Co.*, 59 Vt. 167;
*Allen* v. *The Central Railroad of Iowa*, 42 Iowa, 683.)

The protection, which a court of equity thus gives to the
possession of its receiver, will only be accorded upon the
application of the receiver. (*Blumenthal* v. *Brainard*, 38

Vt. 407.) The objection, that leave of court was not first obtained before bringing suit against a receiver, may be waived by the appearance of the receiver. After such appearance, a motion to dismiss on that ground will not be entertained, as the defendant thereby admits that he was regularly brought into court. ( *The Elkhart Car Works Co.* v. *Ellis,* 113 Ind. 215; *The Ohio & Miss. R. R. Co.* v. *Nickless,* 71 id. 271; *Hubbell et al.* v. *Curran,* 9 How. Pr. Rep. 424; High on Receivers, sec. 261.).

In the present case, Arnold answered the bill, merely setting up the fact that he had been appointed receiver of the personalty, and disclaiming any further interest in the matter. He made no motion to dismiss because leave had not been obtained to file the bill for foreclosure, nor was any action taken, in the proceeding in which the receiver had been appointed, to enjoin the complainant in the foreclosure suit from prosecuting it, or to call her to account for contempt of court.

In *Wiswall* v. *Sampson,* 14 How. 52, it was held that, where a receiver in a chancery cause was in possession of land, parties holding prior judgments, and who had issued and levied their executions thereunder upon said land before the appointment of the receiver, and made sale of the land while it was in the receiver's possession, without obtaining leave of the appointing court, were not only guilty of contempt, but that the sale itself was illegal and void, and passed no title to the purchaser. It appeared there, that the judgment creditors so proceeding under their judgments had notice of the pending suit in chancery. The action was ejectment, brought by the purchasers at the execution sale against the purchaser at a sale, made by the master in the chancery cause where the receiver had been appointed. The judgment of the lower court was in favor of the plaintiffs, but was reversed on appeal.

6—151 ILL.

In the case at bar, the chancery suit, in which the receiver was appointed, was settled and the receiver was discharged before the decree of foreclosure, from which the present appeal has been prosecuted, was entered. Therefore, the question whether a sale made under the foreclosure decree would be void if made while the receiver was in possession of the land, cannot arise here. In accordance with the authorities already referred to, which criticise and decline to follow the case of *Wiswall* v. *Sampson, supra,* we think, that the court below had jurisdiction, under the circumstances of this case, to proceed with the foreclosure suit, notwithstanding the failure of the complainant therein to obtain leave to make the receiver, appointed in the preceding cause, a party defendant; and that the failure to obtain such leave can not avail here as an objection to the entry of the foreclosure decree.

*Second,* it is claimed that, inasmuch as the property was in the hands of a receiver when the first note and the interest due on the whole debt fell due, therefore the mortgagor, Daniel Mulcahey, Jr., was not responsible for the default in their payment, and that the appellee had no right to declare the whole amount of the mortgage due. The mortgage and notes were signed by Daniel Mulcahey, Jr. He agreed to all the terms and conditions of the mortgage. Upon his default, the appellee had a right to take advantage of the powers conferred upon her by the mortgage. She was not obliged to look to or call upon the receiver to pay her what was due to her. The receiver was not appointed at her instance, nor for her benefit. He was appointed in a litigation brought against the mortgagor by a party claiming his title, but conceding the rights of appellee. The property was put into the hands of the receiver, because the parties to that litigation could not agree among themselves as to the ownership of it. The mortgagor's liability to pay his debt was not transferred or suspended by the appointment of the receiver. If

there was money enough in the hands of the receiver at any time to pay what was due on the mortgage, those, who procured his appointment, should have applied to the court for an order on him so to apply the funds in his hands. The obligation of the mortgagor to pay the notes and interest was not limited to such amounts of money as he should derive from the land mortgaged, or from the personal property upon the land. His obligation was general, and his liability on the notes was enforcible against him, independently of his interest in the stock on the farm, or the crops raised therefrom.

*Third,* the claim is made that a cross-bill to foreclose the mortgage should have been filed in the chancery suit wherein the receiver was appointed. We are not prepared to hold, that the appellee was obliged to assert her rights by such a cross-bill, rather than by an original bill. But if there is any force in this point, it is sufficient to say that it was not raised in any way in the court below. Where a defendant answers a bill, and contests the equities which it sets up upon their merits, and goes to hearing on pleadings and proofs, without objecting in some proper mode that the bill was improperly filed, he will be deemed to have waived such objection. (*Van Wert* v. *Boyes,* 140 Ill. 89; *Senft* v. *Mo. Ry. Co.,* 14 New York Sup. 876.)

*Fourth,* it is objected that the decree is erroneous, in holding Daniel Mulcahey, Jr., liable for such deficiency as may remain after a sale of the mortgaged premises. We think, there was no error in the decree in this respect, as the notes secured by the mortgage were executed by Daniel Mulcahey, Jr., and he was, therefore, personally liable for their payment. It is true that, by the decree entered at the November term, 1892, Daniel Mulcahey, Jr., was ordered to execute a deed of the land to his father, and was to be released from any personal obligation to pay the mortgage, the payment of which was to be assumed by his father. But this decree was finally changed and modified,

and the land was conveyed back to Daniel Mulcahey, Jr., and he executed a declaration of trust, in which he acknowledged, that he held the land in trust "to pay the mortgage debt now due on said premises." Even if the decree of the November term, 1892, could have had the effect of releasing Daniel Mulcahey, Jr., from his personal obligation to appellee, and as between her and himself, we think that, by the subsequent change in the decree, and the deed and declaration of trust executed in pursuance of the settlement between the parties, such release was abrogated, and the original obligation created by the notes and mortgage was restored.

*Fifth*, the decree is not erroneous in allowing a solicitor's fee to be taxed as a part of the costs, because the mortgage expressly provides, that, in case of foreclosure, "the court shall tax up with the costs a sum not to exceed $50.00 as an attorney's fee to be collected as part of the debt hereby secured."

*Sixth*, the amount for which the decree was entered by the Circuit Court is alleged to have been too large by $16.66. This objection is met by the *remittitur* of $16.66, which was entered in the Appellate Court.

The judgment of the Appellate Court and the decree of the Circuit Court are affirmed.

*Judgment affirmed.*