Chicago Title and Trust Company, Complainant, v. Benjamin Goldman et al., Defendants. Charles M. Albers, as Receiver of Phillip State Bank and Trust Company, Appellant. Raymond Hayes, Successor Receiver, and Chicago Title and Trust Company, Appellees.

Gen. No. 36,585.

Opinion filed November 21, 1933.

458

CROWE, GORMAN & SAVAGE, for appellant; W. W. PATTERSON, of counsel.

WILLIAM H. KAILES and SANDERS, CHILDS, BOBB & WESCOTT, for appellees; WILLIAM A. BRADFORD, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

In the circuit court, Chicago Title and Trust Company, as trustee, filed its bill to foreclose a trust deed, and Phillip State Bank and Trust Company (hereinafter called the Bank) was appointed receiver. Subsequently, the Bank failed and Charles H. Albers was appointed receiver by the auditor of public accounts. A few days later, in proceedings brought by the auditor against the Bank in the superior court, Albers was appointed receiver of the Bank and is now acting as such receiver. Still later, Raymond Hayes was appointed "successor receiver" in the foreclosure proceedings in the circuit court. From an order of the circuit court ordering Albers, receiver of the Bank, to pay said "successor receiver" in the foreclosure proceedings $2,566.72, the receiver of the Bank (hereinafter called appellant) has appealed.

Pursuant to an order of the circuit court entered after the Bank had closed, appellant filed, in that court, an account of the Bank as receiver in the foreclosure case, which showed to the credit of the receivership, $2,445.97, and the order appealed from was entered in a hearing wherein that account came on for approval. No evidence was introduced, the parties stipulating as to the facts. The order entered October 27, 1932, includes findings of fact, and is as follows:

"1. That said Phillip State Bank & Trust Company of Chicago was, prior to June 24, 1932, acting as

receiver of the premises described in the bill of complaint herein by order duly entered in these proceedings.

"2. That said Bank suspended business on June 21, 1932, and that Charles H. Albers was appointed by the Superior Court of Cook County to be receiver of the said bank in proceedings filed by the People of the State of Illinois on the relation of Oscar Nelson as auditor of public accounts of the State of Illinois against said bank, being Case No. 561388 pending in said Superior Court; that said Charles H. Albers duly accepted said appointment, qualified, and is now acting as receiver of said bank.

"3. That on June 30, 1932, Raymond Hayes was duly appointed to be successor receiver of the premises described in the bill of complaint herein and that the said Bank has turned over the possession of the premises and all documents belonging to the receivership estate to the said successor receiver and is now filing his final report and account herein;

"4. That the final report and account filed herewith contains a true, accurate and correct account of the moneys actually received and the disbursements actually made by the Bank as shown by its books and records for the period from March 24, 1932, to June 24, 1932; that according to said accounting, the Bank as receiver should have the sum of $2,566.72 on hand as a result of the operation of this receivership.

"The Court Further Finds that there remain unpaid, certain bills incurred by the Bank, as receiver, in the total amount of $452.45, as shown by the books and records of the Bank, statement of which bills is attached to the final report and account heretofore filed in this court.

"The Court Further Finds that the money collected by the said Bank in its capacity as receiver was carried in the name of Phillip State Bank & Trust Com-

pany, as receiver, in this particular cause, and was deposited by it as receiver in the Bank and carried by it in a trust account in the trust department of the said bank.

"The Court Further Finds that the said Bank was acting as receiver in a large number of cases in the Circuit and Superior Courts of Cook County, and that all moneys collected by it in its capacity as receiver in these various suits were carried as trust accounts in the Bank in the same form and manner as the account covering the receivership in this particular cause; that at the time of the closing of the Bank, on June 21, 1932, the total amount of funds so deposited, and which should be on hand in the said bank, was $73,453.12.

"The Court Further Finds that the Bank was also acting as trustee, guardian, executor, administrator and in other trust capacities in a large number of estates and that the funds so held by the said bank were also carried as trust accounts in the trust department of the said bank; that the total amount of all trust claims, according to the books and records of the Bank, is approximately $700,000.

"The Court Further Finds that the moneys held by the Bank in the trust department, either as receiver or in other trust capacity, were intermingled by the said bank with the general funds, and at the time of the closing of the said Bank there was not sufficient money on hand to pay to the various receivership estates, or beneficiaries of trust estates, the amount of money shown to be due them by the books and records of the said bank.

"The Court Further Finds that said bank, at the time of its closing, had on deposit with the auditor of public accounts of the State of Illinois, certain securities said to be of a value of $200,000, which securities constitute a guaranty fund for the payment of all trust claims against said petitioner, as provided for in the Trust Companies Act of the State of Illinois.

"The Court Further Finds that at the time of the closing of the Bank, there was on hand, in the vaults of the said bank, cash in the amount of approximately $20,000.

"The Court Further Finds that the money shown to be due to the receivership estate in this cause as set out in the final report and account heretofore filed, said moneys being in the amount of $2,566.72, is a prior claim as against any and all creditors of the Bank and should, by reason thereof, be paid forthwith.

"The Court Further Finds that Charles H. Albers, receiver of the Bank refuses to pay over the said sum of $2,566.72 until such time as he can ascertain the total amount of trust claims and the total amount of money available to pay such claims and until such time as the question of priority of such claims has been determined in the bank receivership proceeding, said proceeding being entitled 'People of the State of Illinois vs. Phillip State Bank & Trust Company, Superior Court case number 561388.'

"It Is, Therefore, Ordered, Adjudged and Decreed that the statement of receipts and disbursements as shown by the report and account heretofore filed by the said Charles H. Albers as receiver of the Phillip State Bank & Trust Company be, and the same is hereby approved.

"*It Is Further Ordered, Adjudged and Decreed that Charles H. Albers, receiver of the Phillip State Bank & Trust Company, pay over the sum of $2,566.72 forthwith to Raymond Hayes, the successor receiver appointed herein.* (Italics ours.) . . ."

At the hearing appellant's position, as appears from the certificate of evidence, was as follows:

"That as such receiver he is under no personal liability for any part of said balance shown in the final account and report that he had filed herein as receiver of said Phillip State Bank & Trust Company; that said Superior Court, which appointed him as such re-

ceiver, has sole jurisdiction to determine what shall be the priority, if any, of the claims filed in such receivership and what shall be the percentage payable thereon, and that such determination has not yet been made; that before, such determination is made all claimants who filed claims in said cause No. 561388 are entitled to be heard in regard to the allowance or disallowance of such claims, and in what amounts; that distribution according to such determination can be ordered only by said Superior Court; that on the hearing of this final report and account this court is without jurisdiction to make such determination or order any distribution of said assets; that if he should pay out of the cash on hand in said bank the full balance shown in the final report and account in this estate, it would result in giving this estate preference over the various estates, trusts, and matters above mentioned as to which said Bank acted in a representative capacity; that if it be held that he should make such payment and a similar holding should be made in other estates, trusts or matters in which said Phillip State Bank & Trust Company acted in a representative capacity, and upon the filing in court by said receiver of said Bank of final reports and accounts therein, the result would be that until the exhaustion of said cash and the proceeds derived from said securities deposited with said State Auditor such estates, trusts and matters would be paid in full in which the final reports and accounts are filed first, and then nothing would be left to be paid on, and nothing would be paid on, the remaining estates, trusts or matters; that this estate is entitled to share only pro rata with the other trusts, estates and matters above mentioned in the distribution of the proceeds from the securities deposited with said state auditor to secure trust claims, and that as to the other assets of said Bank this estate is entitled to share only in the same manner

and to the same extent that claimants of the same class as this estate are entitled to share."

In the certificate of evidence, the chancellor gives the following reason for entering the order:

"That the Phillip State Bank & Trust Company never obtained title to this money; that this money belongs to this court and the Bank, as such receiver, is only an arm of this court; that as such receiver the Bank was under an absolute liability to pay the full amount in this receivership that should be on hand, and that said Charles H. Albers, as receiver of said Bank, is under the same unconditional liability."

It will be noted that the order of the circuit court orders appellant, receiver of the Bank in the proceedings pending in the superior court, "to pay over the sum of $2,566.72 forthwith to Raymond Hayes, the 'successor receiver'" in the foreclosure proceedings in the circuit court. This order was entered more than four months after the superior court, through its receiver, had taken possession of the assets of the Bank, and at a time when the Bank receivership was in due course of administration.

"A court exercising equity jurisdiction, in appointing a receiver of the property of a corporation, holds and administers the estate, through the receiver as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it. (*Evans v. Illinois Surety Co.*, 298 Ill. 101; *Porter v. Sabin*, 149 U. S. 473; *Thompson v. Phenix Ins. Co.*, 136 id. 287; *Union Bank v. Kansas City Bank*, 136 id. 223; *Booth v. Clark*, 17 How. 322; *Peale v. Phipps*, 14 id. 369; *Wiswall v. Sampson*, 14 id. 52.) It is for the court which has taken the assets of an insolvent corporation into its hands for distribution, and for that court alone, to determine who its creditors are and the amounts of their respective claims. (*Attorney General v. American Legion of Honor*, 196 Mass. 151.) The court

which appointed the receiver is the court to decide whether it will itself adjudicate upon claims against the receiver or will allow them to be litigated else-where. It may permit suits upon such claims in foreign jurisdictions or reserve their determination to itself. But no suit, unless expressly authorized by statute, can be brought against the receiver without the permission of the court which appointed him. *Mulcahey v. Strauss,* 151 Ill. 70; *Shedd v. Seefeld,* 230 id. 118; *Porter v. Sabin, supra; Texas and Pacific Railway v. Cox,* 145 U. S. 593; *Barton v. Barbour,* 104 id. 126.'' (*Evans v. Illinois Surety Co.,* 319 Ill. 105, 109–10.)

''The law is well settled that where a receiver has been appointed by a court of competent jurisdiction, and has taken possession of property in his capacity as receiver, he has the right to hold such property and dispose of it under the direction of the court, and any unauthorized interference therewith, by taking possession of the property or instituting legal proceedings to obtain possession, without the sanction of the court appointing such receiver, is a direct contempt of court, and punishable as such. (*Richards v. People,* 81 Ill. 551.)'' (*St. L., A. & S. R. R. Co. v. Hamilton,* 158 Ill. 366, 368.)

''All the authorities sustain the proposition that, when a court of equity acquires jurisdiction of a cause, and appoints a receiver to take charge of the property involved, then no other court of co-ordinate jurisdiction has any power or authority to interfere or meddle with the property in the hands of the receiver, but must leave the court appointing the receiver untrammeled in its administration of the same, as the law directs, regardless of whether the original appointment was or was not erroneous. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose

jurisdiction embraces the same subjects and persons, and has no reference to the supremacy of one tribunal over the other, nor to the superiority in rank of the respective claims, in behalf of which the conflicting jurisdictions are invoked." (23 R. C. L. 66.)

"It is the duty of a court appointing a receiver to protect him in the discharge of his duties and in the control and possession of the property in his custody as such against anyone interfering therewith, whether a party to the receivership proceeding or not, and whether he claims paramount to or under the right which the receiver was appointed to protect. The possession of the receiver is that of the court, and consequently if any person without leave intentionally interferes with such possession, he necessarily commits a contempt of court, and is liable to punishment therefor. It is the duty of the court to protect a receiver's possession, not only against acts of violence but also against suits at law; and it is immaterial whether this unlawful interference comes in the way of actual violence, or by intimidation and threats." (23 R. C. L. 64–5.)

"And where a court which has appointed a receiver, who has property in his possession, permits him to be made a party defendant to an action instituted in another court for the purpose of asserting liens or other claims against the property which existed before his appointment, such permission is to be construed as allowing the prosecution of the action merely for the purpose of determining and establishing such liens and can not be held to go to the extent of authorizing the property to be taken from the possession of the receiver and applied by the other court to the satisfaction of the claims if they are established. . . . As still further illustrating the aversion entertained by courts of equity toward any interference with the possession of their receivers, it is held that a receiver is

not justified in paying out money in any other manner than upon the order of the court appointing him, and that this court will not sanction a payment made by him, even upon the compulsory process of another court. And when a judgment creditor has attached money in the hands of a receiver, under proceedings instituted in a court of law, and has obtained an order therein for payment of the money attached, which order is obeyed by the receiver, such payment will not be allowed by the court in passing his accounts.'' (High on Receivers (4th ed.) 170–1.)

In *De Winton v. Mayor of Brecon,* 28 Beav. 200, it is stated:

''. . . I apprehend this is clear, that the Court never allows any person to interfere either with money or property in the hands of its Receiver, without its leave; whether it is done by the consent or submission of the Receiver or by compulsory process against him. The Court is obliged to keep a strict hand over property in the hands of a Receiver, or which by virtue of the order of the Court may come into his hands, in order to preserve entire jurisdiction over the whole matter, and to do that which is just in the cause between the parties. It is always to be remembered, that the Receiver in this case would not have got a penny except by the order of the court enabling him to receive it, and entitling him to give a good discharge to the persons who paid it; and consequently it is strictly money belonging to the Court of Chancery, and the Receiver can only discharge himself by paying it in obedience to the direction and order of that Court.''

In 23 Am. & Eng. Ency. of Law, 1112, it is stated:

''Another court of co-ordinate jurisdiction has no right to interfere with property in the hands of a receiver already appointed, nor to entertain complaint

against such receiver, nor attempt to control or call him to account, or undertake to remove him.''

In the instant case, the possession of the assets of the Bank by appellant, its receiver, is not the possession of the circuit court, but the possession of the superior court. The record in the instant case demonstrates the wisdom of the rule that determines that the distribution of the Bank's assets must be made by the chancellor of the superior court. The Bank acted as receiver ''in a large number of cases in the Circuit and Superior Courts of Cook County,'' and it also acted as ''trustee, guardian, executor, administrator and in other trust capacities in a large number of estates.'' The moneys held by it ''in the trust department, either as receiver or in other trust capacity, were intermingled by the said bank with the general funds, and at the time of the closing of the . . . Bank . . . there was not sufficient money on hand to pay to the various receivership estates, or beneficiaries of trust estates, the amount of money shown to be due them by the books and records of the said bank.'' The total amount of funds which the Bank should have had on hand in the receivership matters was $73,453.12, and the ''total amount of all trust claims, according to the books and records of the . . . Bank . . ., is approximately $700,000.'' The securities deposited by the Bank with the state auditor under the Trust Companies act were, under the act, ''for the benefit of the creditors of said company.'' Appellant has not the physical possession of these securities, but even if he had, he would be unable, as receiver, to make any use of them without an order of the chancellor of the superior court. Even if it could be assumed, in times like these, that the securities would still realize, upon a sale, their face value, it is certain that the Bank's assets will be hardly sufficient to pay thirty-three and

one-third per cent of the total amount due on trust claims. *All* of the creditors of the Bank are faced with the tragic situation that there was on hand at the time of the closing of the Bank, approximately only $20,000 in cash. If other chancellors of the circuit and superior courts, who have before them receivership matters in which the Bank acted as receiver, should enter orders similar to the one now before us, an unwarranted, unseemly, intolerable situation, akin to a scramble for the assets, would be presented. The chancellor of the superior court has the sole right to administer the estate, to determine who are the creditors of the Bank and the amounts of their respective claims, and to hold the assets, through his receiver, for the benefit of those whom he ultimately adjudges to be entitled thereto, and in the performance of his plain duty in the premises he will not permit his receiver to obey the instant order of the circuit court. Appellant, receiver, can only discharge himself by paying moneys in obedience to the direction and order of the superior court, and the theory of the chancellor of the circuit court, as stated in the reason he gave for entering the order, that the appellant, as receiver of the Bank, was under an ''unconditional liability'' to pay ''the successor receiver'' the full amount of the claim, finds, of course, no warrant in the law. If the order in the instant case could be justified, then it would follow that the chancellor of the circuit court, if the amount of the claim against the Bank's receiver in the foreclosure case warranted it, might enter an order requiring appellant to pay over to the ''successor receiver'' the full amount that he had in his possession as the Bank's receiver. The mere statement of such a contention would be a sufficient answer to it.

The proper procedure in the instant case is for the chancellor of the circuit court to order the ''successor receiver'' to file a claim in the Bank receivership proceedings in the superior court. In that proceeding, in

an orderly, equitable way, all of the creditors of the Bank will have their day in court.

The question involved in this appeal seems to us to be a simple one, and we justify the length of this opinion upon the ground that counsel have informed us that many of the closed banks in Cook county show conditions very similar to those present in the Bank receivership proceeding in the superior court, and that "this is a test case."

As that part of the order of the circuit court, entered October 27, 1932, approving the report and account of Charles H. Albers, receiver of the Phillip State Bank and Trust Company, is not questioned, it is affirmed; and that part of the order wherein said receiver is ordered to pay over the sum of $2,566.72 forthwith to Raymond Hayes, "the successor receiver," is reversed.

*Order of the circuit court of Cook county entered October 27, 1932, affirmed in part and reversed in part.*

SULLIVAN, P. J., and GRIDLEY, J., concur.